RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0388P (6th Cir.)
File Name: 02a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

VERIZON NORTH, INC.,
     *Plaintiff-Appellee,*

*v.*

No. 01-1013

JOHN G. STRAND, Chairman;
JOHN C. SHEA,
Commissioner; and DAVID A.
SVANDA, Commissioner,
     *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 98-00038—Robert Holmes Bell, Chief District Judge.

Argued: June 20, 2002

Decided and Filed: November 7, 2002

Before: BOGGS, NORRIS, and BATCHELDER, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** David A. Voges, ASSISTANT ATTORNEY
GENERAL, PUBLIC SERVICE DIVISION, Lansing,
Michigan, for Appellant. Gerald Masoudi, KIRKLAND &

1

ELLIS, Washington, D.C., for Appellee.  Brian J. Leske, WORLDCOM, INC., Washington, D.C., for Amici Curiae. **ON BRIEF:**   David A. Voges, Henry J. Boynton, ASSISTANT ATTORNEYS GENERAL, PUBLIC SERVICE DIVISION, Lansing, Michigan, for Appellant.  Patrick F. Philbin, KIRKLAND & ELLIS, Washington, D.C., for Appellee. Brian J. Leske, WORLDCOM, INC., Washington, D.C., Darryl M. Bradford, Sona Rewari, JENNER & BLOCK, Chicago, Illinois, David L. Lawson, Jennifer M. Rubin, SIDLEY, AUSTIN, BROWN & WOOD, Washington, D.C., Leland R. Rosier, CLARK HILL, Okemos, Michigan,  for Amici Curiae.

---

**OPINION**

---

BOGGS, Circuit Judge.  Commissioners John G. Strand, John C. Shea, and David A. Svanda of the Michigan Public Service Commission (the "MPSC") appeal from the district court's grant of a declaratory judgment in favor of Verizon North, Inc. ("Verizon")[1] in Verizon's suit challenging a February 25, 1998 order of the MPSC (the "February 25 order" or the "order").  Verizon, an incumbent local telecommunications carrier in Michigan, alleged that the order conflicted with, and was preempted by, the federal Telecommunications Act of 1996 (the "FTA" or the "Act"), Pub. L. No. 104-104, 56 Stat. 110 (1996) (codified in various sections of 47 U.S.C.) to the extent that it required incumbents to offer network elements and services to competitors through published tariffs and to combine unbundled network elements for competitors.  The district court agreed and granted injunctive relief from both aspects of the order.  For the reasons set forth below, we affirm the district court's judgment with respect to the tariff

---

[1]The case was instituted by GTE North Inc., which in 2000 became Verizon North, Inc.

requirement, but vacate the judgment with respect to the bundling requirement.

**I**

This is the second time that this case has reached this court. In our first decision, issued on April 20, 2000, we explained the history and substance of the action brought by Verizon (which at the time was still GTE):

> [In December 1996,] the MPSC initiated . . . state law proceedings against GTE and other incumbent [Local Exchange Carriers, or "LECs"] in order to establish terms of interconnection to Michigan local exchange networks generally. . . . In connection with these general interconnection proceedings, the MPSC required GTE and Ameritech, as Michigan LECs, to file with the Commission "Total Service Long Run Incremental Cost" (TSLRIC) studies for both regulated and non-regulated telecommunications services. In addition, the MPSC directed GTE to publish tariffs in which GTE would offer to sell its network elements and wholesale services to any interested party at rates predetermined by the Commission. GTE responded to the Commission's order by filing a petition for rehearing in which GTE challenged the MPSC's rates for unbundled loops as confiscatory in violation of the FTA. The MPSC denied GTE's petition for rehearing, and GTE appealed the MPSC's order to the Michigan Court of Appeals. On December 30, 1997, the court affirmed the MSPC's order, and the MPSC proceeded to use GTE's and Ameritech's TSLRIC studies to determine prices for new entrants' access to bundled and unbundled network elements and basic local exchange services throughout Michigan.
>
> On February 25, 1998, in the course of the state proceedings against GTE and Ameritech, the MPSC issued the order contested in this appeal. In the February 25 order, the MPSC used GTE's TSLRIC studies to establish the rates at which GTE would be

compelled to sell unbundled network elements to its competitors. In addition, the order stated that the FTA requirement that GTE allow competitors to access pieces, or unbundled elements, of GTE's local network did not preclude GTE's competitors from requesting access to pre-assembled, fully operational local service platforms. Upon receiving the order, GTE sued the MPSC in the district court, alleging that the Commission, acting pursuant to Michigan law, violated the FTA when it issued the February 25 order: (1) directing GTE to provide competitors with access to pre-assembled, fully operational service platforms; and (2) requiring GTE to publish tariffs offering to sell elements of its network at rates predetermined by the Commission.

*GTE North, Inc. v. Strand*, 209 F.3d 909, 913-14 (6th Cir. 2000) ("*Verizon I*").

In that first decision, this court reviewed the district court's dismissal of the case for lack of subject matter jurisdiction. The district court had held that it lacked jurisdiction in the case, because § 252(e)(6) of the Act (47 U.S.C. § 252(e)(6)) gives federal courts jurisdiction to review state commission orders approving or rejecting final interconnection agreements and the February 25 order was not such an order. This court determined that the limitation on federal review set forth in § 252(e)(6) did not apply and held that, since the action presents a potential instance of federal preemption, the district court had jurisdiction to review the order under its general federal question jurisdiction (28 U.S.C. § 1331). *See Verizon I*, 209 F.3d at 915-20. Further, this court held that Verizon's suit against the individual commissioners in their official capacity, which seeks only prospective injunctive relief, is appropriate under *Ex parte Young*, 209 U.S. 123 (1908).[2] *See*

---

[2]In its present appeal, the MPSC again challenges this court's jurisdictional and *Ex parte Young* holdings. However, after the parties' briefs were filed, the Supreme Court decisively answered the questions raised by the MPSC. In *Verizon v. Public Service Commission of Maryland*, 122 S. Ct. 1753 (2002), the Court held that § 252(e)(6) does

rule upheld by the Supreme Court. The MPSC disagrees, contending that its rule does provide Verizon compensation for the bundling work it requires.

Verizon raised the compensation issue before the district court. *See* Memorandum in Support of Verizon's Motion for Summary Judgment at 3. However, since the district court invalidated the MPSC rule as violating the plain language of the Act, it neither reached nor created a record regarding this more limited alternative argument. Therefore, this court lacks the factual basis upon which to consider this issue. Accordingly, we vacate the district court's holding with respect to this claim and remand the case for further consideration.

### III

For the foregoing reasons, we AFFIRM in part and VACATE in part the district court's decision.

During the pendency of this appeal, the Supreme Court issued an opinion overturning the Eighth Circuit on this issue. As mentioned above, in *FCC*, 122 S. Ct. at 1684-87, the Court held that the FCC rule requiring incumbents to combine elements at competitors' request did not violate the plain language of the FTA. In relevant part, the Court wrote:

If Congress had treated incumbents and entrants as equals, it probably would be plain enough that the incumbents' obligations stopped at furnishing an element that could be combined. The Act, however, proceeds on the understanding that incumbent monopolists and contending competitors are unequal, and within the actual statutory confines it is not self-evident that in obligating incumbents to furnish, Congress negated a duty to combine that is not inconsistent with the obligation to furnish, but not expressly mentioned. Thus, it takes a stretch to get from permissive statutory silence to a statutory right on the part of the incumbents to refuse to combine for a requesting carrier, say, that is unable to make the combination or may even be unaware that it needs to combine certain elements to provide a telecommunications service.

*Id.* at 1684 (citations omitted). The Supreme Court having foreclosed the reasoning upon which the district court based its invalidation of the MPSC's bundling requirement, we would ordinarily reverse the district court's holding.

However, Verizon argues that there is an alternative ground upon which this court should uphold the district court's invalidation of the MPSC bundling rule. Verizon points to the fact that in *FCC*, the Supreme Court specifically noted that under the FCC bundling requirement, competitors requesting bundling must pay "'a reasonable cost-based fee' for whatever the incumbent does" to combine elements. *FCC*, 122 S. Ct. at 1685 (quoting Brief for Petitioner Federal Parties in Nos. 00-587, etc. at 34). Verizon alleges that the MPSC rule at issue in the present case provides for no such compensation and is, therefore, distinguishable from the FCC

*Verizon I*, 209 F.3d at 922. Accordingly, this court remanded the case to the district court for consideration of the merits.

On remand, the district court granted Verizon's motion for summary judgment and struck down both challenged portions of the MPSC order, holding that they conflicted with and were preempted by the FTA. First, the court held that the tariff requirement was invalid, because it would allow competitors to circumvent the negotiation and arbitration process set out in § 252 of the Act. *Verizon North, Inc. v. Strand*, 140 F. Supp. 2d 803, 809-10 (W.D. Mich. 2000). Second, the court held that requiring incumbents to combine previously unbundled network elements at competitors' request violated the plain language of the Act, which requires incumbents to provide competitors access to network elements "in a manner that allows *requesting carriers* to combine such elements." *Verizon North, Inc.*, 140 F. Supp. 2d at 810 (quoting 47 U.S.C. § 251(c)(3) (emphasis added)). The MPSC filed a timely appeal from both holdings.

## II

### *The Tariff Requirement*

Congress passed the FTA in order to end local telecommunications monopolies and engender competition in local telecommunications markets. To attain these goals, the Act imposes various requirements on incumbent telecommunications providers. The requirements include the duty to: (1) permit competitors who have built their own telecommunications networks to interconnect with the incumbent's network "for the transmission and routing" of traffic between the networks, 47 U.S.C. § 251(c)(2); (2) permit competitors to lease elements of the incumbent's network in order to allow the competitors to provide retail

---

not divest federal courts of federal question jurisdiction under 28 U.S.C. § 1331, *id.* at 1758, and that a suit seeking injunctive relief from individual state commissioners is proper under *Ex parte Young. Id.* at 1760-61.

services through such a network, *id.* at § 251(c)(3); and (3) permit competitors to purchase telecommunications services at wholesale prices in order to allow the competitors to resell those services to retail customers, *id.* at § 251(c)(4).

In order to facilitate this interconnection, leasing, and wholesaling, Congress designed a comprehensive system, under which requesting competitors and incumbent providers are to enter into interconnection agreements setting forth the terms and conditions of their business relationship. *Id.* at §§ 251(c)(1), 252. First, the Act explains that, "[u]pon receiving a request for interconnection, services, or network elements . . . an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier . . . ." *Id.* at § 252(a)(1). In this regard, the FTA places on incumbents the duty to "negotiate in good faith the terms and conditions of such agreements." *Id.* at § 251(c)(1). However, either party to the negotiation may ask the relevant state commission to mediate any unresolved issues. *Id.* at § 252(a)(2). If negotiation between the incumbent and the competitor does not produce an agreement, the FTA provides that either party can, during a specific time period, ask the state commission to undertake binding arbitration of any open issues, and the FTA provides specific guidelines for such arbitration. *Id.* at § 252(b)-(d).

Once an interconnection agreement is reached, either through negotiation or arbitration, the FTA requires the relevant state commission to approve or reject the agreement, and it provides specific guidelines for the approval process. *Id.* at § 252(e). If the state commission does not act within a prescribed time period, the FTA provides for the Federal Communications Commission (FCC) to decide, which action preempts the state commission. *Id.* at § 252(e)(5). If the state commission makes a determination on the proposed interconnection agreement within the required time, the FTA provides that a party aggrieved by the commission's determination may bring an action for review in federal district court. *Id.* at § 252(e)(6).

agreement altogether and [allowed competitors] to order services 'off the rack' without an interconnection agreement." *Ibid.* The Oregon district court held that designing an alternative system, under which competitors might acquire services and network elements from incumbents without engaging in the § 252 process, was impermissible under the FTA.

We agree. The FTA permits a great deal of state commission involvement in the new regime it sets up for the operation of local telecommunications markets in America. Indeed, the Act makes clear that state commission regulations are not preempted as long as "such regulations are not inconsistent with the provisions of [the FTA]." 47 U.S.C. § 261(b). However, the MPSC tariff requirement is "inconsistent with the provisions of [the FTA]," and therefore invalid, because it completely ignores and bypasses the detailed process for interconnection set out by Congress in the FTA.

### *The Bundling Requirement*

The second part of the MPSC order at issue in this case requires Verizon to offer "unbundled network elements as combinations or platforms" at competitors' request. MPSC Feb. 25, 1998 Order at 23, J.A. at 278. In invalidating that rule, the district court agreed with Verizon's contention that requiring incumbents to combine network elements for requesting competitors is inconsistent with the plain language of the Act, which requires incumbents to provide competitors access to network elements "in a manner that allows *requesting carriers* to combine such elements." 47 U.S.C. § 251(c)(3) (emphasis added). In so holding, the district court followed the Eighth Circuit's reasoning in *Iowa Utilities Board v. FCC*, 219 F.3d 744 (8th Cir. 2000). In that case, the Eighth Circuit held that a similar rule adopted by the FCC violated the plain language of § 251(c)(3) of the Act, which "unambiguously indicates that requesting carriers will combine the unbundled elements themselves." *See Iowa Utilities Bd.*, 219 F.3d at 759.

state commission decisions interpreting and enforcing previously-approved interconnection agreements." *Ibid.* Therefore, the fact that an interconnection agreement already existed between the parties was important to the validity of the state commission's plan.

The only other court that appears to have considered the specific question presented by this case also recognized the centrality of the § 252 process. An Oregon district court held that a state commission's tariff requirement conflicted with the FTA, because it would require incumbents to offer their services to competitors "via a procedure that bypasses the Act entirely and ignores the procedures and standards that Congress has established." *MCI Telecomms. Corp. v. GTE Northwest, Inc.*, 41 F. Supp. 2d 1157, 1178 (D. Or. 1999).[5] In so holding, that court pointed out that the state commission had not "merely adopted a short-form interconnection agreement, along with a list of resale and unbundled element prices that will be incorporated in those agreements. Rather, the [commission had] dispensed with the interconnection

---

[5]The amici supporting reversal of the district court in this case direct this court's attention to *In re Public Utility Commission of Texas*, 13 F.C.C.R. 3460, ¶¶ 132-39 (1997), wherein the FCC upheld a Texas commission's rule permitting certain competitors to purchase services at a 5% discount to the rate listed in a tariff filed with the state. The amici cite the FCC decision as evidence that the FCC interprets the FTA to permit state commissions to implement tariff schemes that bypass the interconnection agreement provisions of the Act. *See* Brief of Amici Supporting Reversal at 22. According to the amici, this interpretation is entitled to substantial deference, pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). However, while the FCC's discussion of the Texas rule may be read to suggest that the rule permitted competitors to acquire services from incumbents without first taking part in the interconnection agreement process, that fact is not discussed, relied upon, or even challenged in that case. Since this court can not tell from the FCC decision whether or not the Texas rule requires interconnection agreements, and since no party seems to have argued that any evasion of the interconnection agreement process violated the Act, this court can not rely upon *In re Public Utility Commission of Texas* as setting forth the FCC's position on the relevant issue in the present case.

---

The MPSC order at issue here establishes a different route for competitors to obtain services and network elements from incumbents. The order requires Verizon to file tariffs with the state, "set[ting] forth the rates, terms, and conditions" under which competitors might acquire network elements and services. MPSC Feb. 25, 1998 Order at 9-10, J.A. at 264-65. As the district court in this case explained, the order requires incumbents "to file tariffs offering its network elements and services for sale on fixed terms to all potential entrants *without the necessity of negotiating an interconnection agreement.*" *Verizon North, Inc.*, 140 F. Supp. 2d at 809 (emphasis added). In this way, the MPSC order permits competitors to purchase the services and elements directly off of the tariff menu, obviating the need to negotiate or arbitrate an interconnection agreement.

After surveying the provisions of the FTA discussed herein, the district court wrote:

> Congress designed a deregulatory process that would rely in the first instance on private negotiations to set the terms for implementing new duties under the Act. In contrast to the private, party-specific negotiation and arbitration system created by Congress, the process for sale of network elements required by the MPSC's Order is a public rule of general application. By requiring Verizon to file public tariffs offering its network elements at wholesale services for sale to any party, the MPSC's Order improperly permits an entrant to purchase Verizon's network elements and finished services from a set menu without ever entering into the process to negotiate and arbitrate an interconnection agreement. It thus evades the exclusive process required by the 1996 Act, and effectively eliminates any incentive to engage in private negotiation, which is the centerpiece of the Act. Accordingly, the Court finds that the tariff requirement in the February 25 order is inconsistent with and preempted by the FTA.

*Verizon North, Inc.*, 140 F. Supp. 2d at 810.

We agree with the district court. The central question in preemption analysis is always "whether Congress intended that federal regulation supersede state law." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986). By its terms, the FTA does not preempt state commission rules "if such regulations are not inconsistent with the provisions of [the FTA]." 47 U.S.C. § 261(b). *See also id.* at § 261(c) (permitting state commissions to impose certain additional requirements on telecommunications carriers, "as long as the State's requirements are not inconsistent with [the FTA]"). Therefore, Congress has clearly stated its intent to supersede state laws that are inconsistent with the provisions of the FTA. *See Verizon I*, 209 F.3d at 923 ("it is precisely because state utility commissions play such a critical role in administering the FTA's regulatory framework that they must operate strictly within the confines of the statute"); see also *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 343 (7th Cir. 2000) ("Congress, exercising its authority to regulate commerce has precluded all other regulation except on its terms."). Further, as the district court in this case pointed out, state law provisions can be inconsistent with, and therefore preempted by, federal law even if the federal and state laws share a common goal. *See Verizon North, Inc.*, 140 F. Supp. 2d at 809. Even in the case of a shared goal, the state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [its] goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)).[3]

[3]Amici contend that the district court erred in relying on *Gade*, as *Gade* involved preemption under the Occupational Safety and Health Act ("OSH Act"), which does not permit supplemental state regulation. In contrast, amici explain, the FTA expressly permits supplemental state regulation. However, it is irrelevant that the FTA permits state regulation whereas the OSH Act does not, because the FTA only permits state regulation that is "not inconsistent with [its] provisions." 47 U.S.C. § 261(b). This is exactly the question facing this court: whether an alternative route to interconnection, bypassing the negotiation/arbitration of an interconnection agreement, is so inconsistent.

molding the business relationship between the incumbent and its competitors, but rather that the MPSC order provides an alternative route around the entire interconnection process (with its attendant negotiation/arbitration, state commission approval, FCC oversight, and federal court review procedures). The Tenth Circuit appears to have recognized this in a recent decision upholding a provision in an interconnection agreement under which a competitor could purchase services at the rates and terms set forth in state tariffs filed by the incumbent in addition to purchasing them pursuant to the rates and terms set forth in its interconnection agreement with the incumbent. *See U.S. West Communications, Inc. v. Sprint Communications Co.*, 275 F.3d 1241 (10th Cir. 2002). The district court in that case had invalidated the provision as violative of the Act, because the competitor gained the terms and conditions outside of the negotiation/arbitration process set forth in § 252. *See id.* at 1249-50. The court of appeals, distinguishing the case before it from the district court decision in the present case, wrote that

the challenged provision does not eliminate interconnection agreements, but rather is a part of one. A decision by [the competitor] to purchase services at the rates and terms set forth in one or more of [the incumbent's] tariffs does not result in abandonment of the interconnection agreement between itself and [the incumbent]. It simply means that the interconnection agreement is amended to include the terms of the particular tariff(s). The parties remain bound by the interconnection agreement at all times, as anticipated by the Act.

*Id.* at 1251. Further, the Tenth Circuit went on to allay the concern expressed by the district court in that case, that incorporation of a tariff provision would not provide a basis for federal court review, by noting that under that court's jurisprudence, "state commissions have inherent authority to interpret and enforce previously-approved interconnection agreements, and . . . federal courts have jurisdiction to review

§ 252(e)(6) provides for federal district court review of the state commission's determination.

According to the MPSC, competitors of Bell companies that have filed such statements may choose to purchase services directly from these statements, without first entering into an interconnection agreement with the incumbent; the MPSC contends that this proves that the interconnection agreement process is not central to the FTA. Verizon disputes this characterization, and contends that competitors still must enter into an interconnection agreement in order to acquire the services; the competitor will simply be able to refer to the § 252(f) statement in seeking an agreement.

As an initial matter, nothing in the language of § 252(f) suggests that it provides an alternative route around the interconnection agreement process for competitors of Bell companies that have filed § 252(f) statements. More importantly, however, § 252(f) is not at issue in the present case, because Verizon is not a Bell operating company. Therefore, whether Congress intended the interconnection agreement process to be the sole method of interconnection for competitors of Bell companies that have filed § 252(f) statements is simply irrelevant to this case.

Moreover, contrary to the MPSC's contention, a review of § 252(f) actually illustrates why Michigan's tariff procedure is inconsistent with, and therefore preempted by, the Act. As mentioned above, the same subsections of § 252 provide the same carefully-designed review process for a § 252(f) statement as they do for an interconnection agreement – the statement is to be presented to the relevant state commission for approval, the FCC can step in to approve the statement if the state commission does not act, and the state commission's actions are subject to federal court review. As discussed above, Michigan's tariff procedure bypasses all of this procedure.

The proper focus for the preemption analysis in this case is on the § 252 process as a whole. The important point is not the narrow issue of negotiation/arbitration as the means for

In the present case, the MPSC order completely bypasses and ignores the detailed process for interconnection set out by Congress in the FTA, under which competing telecommunications providers can gain access to incumbents' services and network elements by entering into private negotiation and arbitration aimed at creating interconnection agreements that are then subject to state commission approval, FCC oversight, and federal judicial review. This is "inconsistent with the provisions of [the FTA]," and therefore preempted.

The best argument to the contrary, set out by the MPSC and amici, is that while the interconnection agreement process set out in § 252 presents competitors one option for achieving interconnection, it is not necessarily the *only* permissible process. Under this theory, Congress set out the negotiation/arbitration/approval/federal review process, not as the central method for market entry, but as one method. Therefore, state commissions, armed with the power granted them by 47 U.S.C. §251(d)(3) to "establish access and interconnection obligations of local exchange carriers" and by 47 U.S.C. § 261(c) to impose "requirements on a telecommunications carrier for intrastate services that are necessary to further competition" as long as such obligations and requirements are consistent with the Act, would be free to devise alternative methods under which competitors could acquire services and network elements from incumbents.

In support of this reading, the MPSC points out that the FTA does not expressly state that the negotiation and arbitration of interconnection agreements is the *sole* method for competitors to gain access to incumbents' network elements and services. In this way, according to the MPSC, the present case is like the situation faced by the Supreme Court in *Verizon Communications Inc. v. FCC*, 122 S. Ct. 1646 (2002) ("*FCC*"), wherein the Court held that the Act's requirement that incumbents provide network elements that may be bundled by competitors did not foreclose an FCC rule requiring incumbents to also combine elements at the competitors' request. In so holding, the Court wrote that "it

takes a stretch to get from permissive statutory silence to a statutory right" for the incumbents, and the Court refused to read the Act's silence on any obligation or lack thereof on the part of incumbents to bundle elements as an affirmative statement that the imposition of any such obligation would be inconsistent with the Act. *Id.* at 1684. The MPSC would have this court hold similarly with respect to the interconnection agreement process contained in § 252 of the Act – that Congress's affirmative statement of that method was not intended to foreclose any alternative methods designed by state commissions.

The difference between the bundling obligation in *FCC* and the interconnection agreement process in the present case is that the detailed procedural scheme – including negotiation, arbitration, state commission approval, FCC oversight, and federal judicial review – set out in § 252 is central to the FTA in a way that a bundling requirement is not. One strong sign that the interconnection agreement process is central to the Act, and is therefore not to be evaded by state rule-making is the requirement of federal judicial review of state commission determinations. As explained above, § 252(e)(1) of the Act provides that all interconnection agreements must be reviewed, and approved or rejected, by the relevant state commission. After this review, § 252(e)(6) provides that any party aggrieved by the state commission's determination may appeal that determination in the federal district courts. Emphasizing the importance to Congress of this federal review, § 252(e)(4) states that "[n]o state court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." 47 U.S.C. § 252(e)(4). However, there is no provision for federal court review of state tariff orders. Therefore, aside from bringing a federal law preemption action pursuant to 28 U.S.C. § 1331 to challenge each tariff order, an incumbent aggrieved by a state commission tariff decision might not be able to seek federal review.

In asserting that the interconnection agreement process is not central to the Act, the MPSC proffers § 252(f) as an

example of a situation in which competitors can acquire services from incumbents without engaging in the interconnection agreement process. However, the MPSC's reliance on this section is misplaced.[4]

Bell operating companies have long been prohibited from offering long distance telephone service; however, § 271 of the FTA permits these companies to enter the long distance market if they can demonstrate that they have opened their local exchanges to competition. The Bell companies can demonstrate that they have done so in one of two ways. They can enter into a qualifying interconnection agreement, 47 U.S.C. § 271(c)(1)(A), (c)(2)(B), or, in the event that no market competitors request such an agreement, they can file a qualifying "statement of the terms and conditions that the company generally offers to provide" with the relevant state commission. *Id.* at § 271. Section 252(f) provides the procedure under which the Bell companies may file, and the state commissions may review, these statements. As with the interconnection agreement process, § 252(e)(5) requires the FCC to review the statement if the state commission fails to do so. Also, again, as with the interconnection process,

---

[4] The MPSC comes closer with its reliance upon *Michigan Bell Telephone v. Strand*, 26 F. Supp. 2d 993, 1000 (W.D. Mich. 1998), to support the same proposition. In rejecting an incumbent's challenge to an MPSC order that altered existing interconnection agreements, the district court in that case held that the commission's actions in amending the existing agreements were permissible because, among other reasons, "the Section 252 negotiation procedure is not the sole means for the MPSC under the federal statutes to order and regulate telecommunications." *Id.* at 1000. The MPSC argues that this language provides support for the proposition that the §§ 251 and 252 process is not the sole process by which competitors can acquire services and network elements from incumbents. However, as the district court in the present case pointed out, the tariff in *Michigan Bell Telephone v. Strand* merely served to amend an existing interconnection agreement. *See Verizon North, Inc.*, 140 F. Supp. 2d at 809. The order at issue in that case did not completely displace the existing interconnection agreement between the parties or, as the MPSC order in the present case does, make unnecessary future interconnection agreements between other parties.