*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

THE OHIO BELL TELEPHONE COMPANY, dba
AT&T Ohio,

*Plaintiff-Appellant*,

v.

THE PUBLIC UTILITIES COMMISSION OF OHIO;
TODD A. SNITCHLER, in his official capacity
as the Chairman of the Public Utilities
Commission of Ohio; STEVEN D. LESSER,
CHERYL ROBERTO, ANDRE T. PORTER, and
LYNN SLABY, in their official capacities as
Commissioners of the Public Utilities
Commission of Ohio; INTRADO
COMMUNICATIONS INC.,

*Defendants-Appellees*.

> No. 12-3145

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-918—Algenon L. Marbley, District Judge.

Argued: November 27, 2012

Decided and Filed: March 28, 2013

Before: NORRIS, GIBBONS, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** J. Tyson Covey, MAYER BROWN LLP, Chicago, Illinois, for Appellant. Thomas G. Lindgren, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Commission Appellees. Edward A. Yorkgitis, Jr., KELLEY, DRYE & WARREN, LLP, Washington, D.C., for Intrado Appellee. **ON BRIEF:** J. Tyson Covey, MAYER BROWN LLP, Chicago, Illinois, for Appellant. John H. Jones, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Commission Appellees. Edward A. Yorkgitis, Jr., Barbara A. Miller, KELLEY, DRYE & WARREN, LLP, Washington, D.C., for Intrado Appellee.

1

————————————

OPINION

————————————

ALAN E. NORRIS, Circuit Judge.   AT&T Ohio ("AT&T") and Intrado Communications, Inc. ("Intrado"), rival telecommunications carriers, submitted to an arbitration conducted by the Public Utilities Commission of Ohio ("the Commission") to determine how to interconnect their networks to service 9-1-1 calls.  AT&T insisted that all points of interconnection be on its network, relying upon Section 251(c)(2) of the federal Telecommunications Act of 1996 ("the Act"), 47 U.S.C § 251(c), a provision only applicable to incumbent carriers[1] like AT&T.  The Commission rejected this request and, instead relied on the general provisions of Section 251(a), and ordered the carriers to establish interconnection points on both AT&T's and Intrado's networks.  AT&T sought judicial review of the arbitration award, and the district court affirmed.

On appeal, AT&T argues that the Commission exceeded its arbitral authority by applying Section 251(a) because Intrado had petitioned for interconnection only under Section 251(c).  AT&T also challenges the arbitration award itself, arguing that the Commission improperly interpreted an incumbent carrier's interconnection duties under the Act.  Having carefully considered these arguments, we **affirm** the judgment of the district court.

**I.**

Intrado, a telecommunications provider specializing in emergency communications, hoped to compete with AT&T for servicing Ohio 9-1-1 calls.  To that end, it began negotiations with AT&T to interconnect their networks.  Without a physical interconnection, the carriers could not exchange traffic, and customers of one carrier would be unable to reach 9-1-1 operators serviced by the other carrier.

————————————

[1]Under the Act, an incumbent carrier is defined as a carrier that provided telephone service to an area prior to February 8, 1996. 47 U.S.C. § 251(h)(1).

The two carriers were unable to agree whether and how to interconnect their networks and Intrado petitioned for an arbitration conducted by the Commission, as provided for by Section 252(b)(2) of the Act.  In its petition, Intrado argued that it was entitled to "interconnection under Section 251(c) of the Act."  According to Intrado, this provision requires incumbent carriers, such as AT&T, to provide interconnection with a requesting telecommunications carrier for the transmission and routing of telephone exchange services.  In other words, an entrenched carrier must allow would-be competitors to connect to its network.

Intrado also argued that it "has the right to choose the location and number of points of interconnection on the incumbent's network."  It urged that, in geographic areas where Intrado was the primary provider of 9-1-1 emergency services–meaning, where Intrado serviced the 9-1-1 operator–it would be more efficient and reliable for AT&T to connect to Intrado's network.  Specifically, Intrado's petition reads,

> [I]n geographic areas in which Intrado has been selected as the primary provider of 911 services . . . AT&T's network must interconnect with Intrado's 911/E911 network so that customers of AT&T located in that geographic area can complete emergency calls to the appropriate [9-1-1 operator] (*i.e.* Intrado's end user customer).

This arrangement, Intrado claimed, would be consistent with how AT&T and other incumbent carriers routinely interconnected with each other for purposes of servicing 9-1-1 calls.  In its initial arbitration brief, Intrado argued that Congress adopted the Act to prevent incumbent carriers from discriminating against less-established carriers.  Therefore, Intrado claimed, it was entitled to the same interconnection arrangement–"the *preferred* method of interconnection for completing [9-1-1] calls"–that AT&T had with other incumbent carriers.

The Commission agreed that, in some instances, AT&T must connect to Intrado's network.  Specifically, the Commission ordered AT&T to establish a point of interconnection on Intrado's network for the delivery of its customers' 9-1-1 calls in geographic areas where Intrado was the designated 9-1-1 service provider.  Conversely, Intrado would need to establish a point of interconnection on AT&T's network in the

areas serviced by AT&T.  The Commission later clarified that its decision was based on Section 251(a) of the Act, which generally "establishes the duty of a telecommunications carrier to interconnect directly or indirectly with the facilities of other telecommunications carriers" not on the incumbent carrier-specific provisions of Section 251(c).

AT&T requested a rehearing on this issue, arguing that the Commission inappropriately applied the general provisions of Section 251(a) when Intrado had petitioned for interconnection solely under Section 251(c).  The Commission denied this request, noting that,

> [T]he record clearly reflects that the proper location of the [point of connection] when Intrado is the 911 service provider . . . is a primary issue.  Furthermore, AT&T discussed Section 251(a) at length on the record in arguing against Intrado's desire to have AT&T establish a POI on Intrado's network.  Further, it would be inappropriate to apply the requirements of Section 251(c) in this scenario when the Commission has already determined that the applicable section of the Act is Section 251(a), regardless of whether or not both parties contend such arrangements fall under Section 251(c).  In sum, AT&T has asserted no facts or arguments that would give us a basis for varying from the award issued in this matter . . . .

AT&T then filed a complaint in the Southern District of Ohio challenging the arbitration award.  AT&T again argued that the Commission erred in relying on Section 251(a) where "no party raised any issue for arbitration regarding alleged interconnection under Section 251(a), and no such 'open issue' was presented to the [Commission] for decision."  AT&T also argued that Section 251(c)(2) alone applied to interconnection issues involving an incumbent carrier and, under that section, Intrado was entitled only to interconnection on AT&T's network.

The district court rejected these arguments and affirmed the Commission's arbitration award.  The court explained that "the issue of whether Intrado's arrangement with AT&T would include compelling AT&T to interconnect on Intrado's network was raised, albeit not explicitly pursuant to [the Commission's] authority under Section 251(a) as opposed to Section 251(c)."

The court recognized that there was "no clear answer" to AT&T's argument regarding Section 251(c)(2) and the location of the points of interconnection.  It explained that Section 251 provides a tiered hierarchy of interconnection requirements, designed to foster competition in telecommunications markets.  While Section 251(a) imposes a general duty for all carriers to provide for interconnection, subsection (c) provides additional obligations specific to incumbent carriers.  These additional obligations include allowing for interconnection "at any technically feasible point within the [incumbent] carrier's network."  The court concluded that, based on this hierarchy, the Commission could compel AT&T to interconnect on Intrado's network under 251(a), regardless of 251(c)(2)'s requirement that AT&T offer a point on its own network:  "If a competitor [non-incumbent carrier] can compel interconnection to another competitor [non-incumbent carrier] under Section 251(a) . . . it follows that an [incumbent carrier] can be compelled to interconnect with a competitor [non-incumbent carrier] under Section 251(a) as well. [Incumbent carriers], after all, have *greater* obligations to interconnect than competitor [non-incumbent carriers], not the other way around, as is well-established under the requirements of Section 251."

This appeal followed.

## II.

Under the Telecommunications Act of 1996, a party may appeal the final arbitration decision of the state utilities commission to a federal district court.  47 U.S.C. § 252(e)(6).  On appeal, this Court's jurisdiction is based upon 28 U.S.C. § 1291.  When reviewing state public service commission orders, we are limited to determining whether the order is consistent with Sections 251 and 252 of the Act.  *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs, Inc.*, 323 F.3d 348, 354 (6th Cir. 2003) (citing *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 586 (6th Cir. 2002)).  With respect to the Commission's findings of fact, we apply the arbitrary and capricious standard, the most deferential standard of judicial review.  Finally, we review *de novo* the Commission's interpretation of the Act.  *Id.*

## III.

On appeal, AT&T argues that the Commission exceeded its arbitral authority by applying Section 251(a) when Intrado had petitioned for interconnection under Section 251(c)(2) only.  As AT&T explains, the Commission's statutory authority to arbitrate an interconnection agreement is confined to the open issues set forth in the petition or the response.  47 U.S.C. § 252(b)(4)(A).  Although this issue is fact-dependant, it is essentially a question of statutory interpretation–how specifically must an issue be raised in a petition to be deemed "an open issue" for purposes of arbitration?  In answering this question, we look to Federal Rule of Civil Procedure 15 for guidance.  Under this rule, an issue not properly raised by the pleadings may nonetheless be tried by the parties' implied consent.  Fed.R.Civ.P. 15(b)(2).  "Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection.  At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *MBI Motor Co., Inc. v. Lotus/E., Inc.*, 506 F.2d 709, 711 (6th Cir. 1974).

This situation, although not governed by Rule 15, is analogous. Here, throughout the arbitration proceedings, AT&T understood  and contested Intrado's request to establish a point of interconnection on its own network, regardless of whether or not Intrado had properly raised the issue in its petition.  Therefore, this issue–whether ultimately resolved under Section 251(c) or Section 251(a)–was sufficiently before the Commission. *See MCI Tele. Corp. v. Mich. Bell Tel. Co.*, 79 F. Supp. 2d 768, 774 (E.D. Mich. 1999) (ruling that an issue, although not raised in the petition or response, was properly before the state commission because the parties had discussed the issue throughout the arbitration proceedings).

## IV.

AT&T argues that the Commission erroneously applied the general provisions of Section 251(a) in determining the points of interconnection because, whenever an incumbent carrier is involved, the more-specific provisions of Section 251(c) control.

The precedence of specific provisions over general provisions, AT&T argues, is a "bedrock principle of statutory interpretation."  AT&T also notes that Section 251(c) explicitly incorporates the requirements of 251(b) and not those of 251(a).  This omission, AT&T argues, evidences that "Section 251(a) simply does not apply" to an incumbent carrier subject to Section 251(c).

We have explained that Congress passed the Act "in order to end local telecommunications monopolies and engender competition in local telecommunications markets." *Verizon N., Inc. v. Strand*, 309 F.3d 935, 939 (6th Cir. 2002).  The Act was designed to "minimize the barriers to market entry erected during the period in which the incumbent provider functioned as a monopoly." *MCI Telecomm. Corp. v. Ohio Bell Tel. Co.*, 376 F.3d 539, 542 (6th Cir. 2004).

In order to accomplish this goal, Sections 251(a) through (c) create "a three-tiered hierarchy of escalating obligations based on the type of carrier involved." *In re Guam Pub. Util. Comm'n*, 12 F.C.C.R. 6925, 6937 (May 19, 1997).  First, Section 251(a)[2] "imposes relatively limited duties on all telecommunications carriers."  Second, Section 251(b) imposes more extensive duties on carriers that qualify as "local exchange carriers."  Third and finally, Section 251(c) imposes the most extensive duties on local exchange carriers that are also incumbents, such as AT&T.[3] *Id.*  The Supreme Court has

---

[2]In relevant part, Section 251(a) reads,

(a) General duty of telecommunications carriers

Each telecommunications carrier has the duty--

> (1) to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers; and
> . . . .

[3]In relevant part, Section 251(c) reads,

(c) Additional obligations of incumbent local exchange carriers

In addition to the duties contained in subsection (b) of this section, each incumbent local exchange carrier has the following duties:

> (1) Duty to negotiate
> . . . .
> (2) Interconnection

The duty to provide, for the facilities and equipment of any requesting

explained that, in the "host of duties" imposed on incumbent carriers by Section 251, "[f]oremost among these duties is the [incumbent carrier's] obligation under 47 U.S.C. § 251(c) to share its network with competitors." *AT&T Corp. v. Iowa Util. Bd.*, 525 U.S. 366, 371 (1999) (citations omitted).

AT&T, in support of its argument that Section 251(c) relieves incumbent carriers of the general interconnection duties set forth under Section 251(a), relies upon language found in *In re Implementation of the Local Competition Provisions in the Telecomm. Act*, 11 F.C.C.R. 15499, 15991 (Aug. 1, 1996), *vacated by Iowa Util. Bd. v. F.C.C.*, 219 F.3d 744 (8th Cir. 2000), where the FCC said that "Section 251 is clear in imposing different obligations on carriers depending upon their classification." In relying upon this isolated passage, AT&T mischaracterizes the FCC's position. In its order, the FCC recognized that Section 251(a) "applies to all telecommunications carriers," although it does not "apply equally to all telecommunication carriers." In this regard, the agency explained that Section 251 clearly imposes *greater* interconnection burdens on incumbent carriers, citing the additional obligations set forth under Section 251(c) as an example. *Id.*

Admittedly, the text of the Act is not always clear. However, we are persuaded that the district court's interpretation, that incumbent carriers are subject to Section 251(a)'s general interconnection duties, is the correct one. Simply stated, it makes little sense to read the Act in a way that imposes fewer duties on incumbent carriers than on less-established, nondominant carriers. As we have previously recognized, the Act is designed to encourage competition by imposing the greatest interconnection duties on incumbent carriers like AT&T. Here, were AT&T not an incumbent carrier subject to Section 251(c) and, instead, were a less-established carrier, the issue would be easy: the Commission clearly would have the authority under Section 251(a) to order interconnection on Intrado's network. There is no limiting language in the statute stating

---

telecommunications carrier, interconnection with the local exchange carrier's network--
. . . .
(B) at any technically feasible point within the carrier's network;
. . . .

47 U.S.C. § 251(c); *see also* 47 C.F.R. § 51.305(a).

that interconnection must occur on the incumbent carrier's network and, based on the hierarchical structure of the Act, it logically follows that the Commission has the authority to impose this same duty on an incumbent carrier.

## V.

For the foregoing reasons, we **affirm** the judgment of the district court.