*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0073P (6th Cir.)
File Name: 03a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHIGAN BELL TELEPHONE
COMPANY d/b/a AMERITECH
MICHIGAN,
       *Plaintiff-Appellee,*

    *v.*

MCIMETRO ACCESS
TRANSMISSION SERVICES,
INC.,
       *Defendant-Appellant,*

JOHN G. STRAND; ROBERT B.
NELSON; DAVID A. SVANDA,
Commissioners of the
Michigan Public Service
Commission (in their official
capacities and not as
individuals),
       *Defendants.*

No. 01-1312

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-70636—Victoria A. Roberts, District Judge.

Argued: September 18, 2002

Decided and Filed: March 10, 2003

Before: MARTIN, Chief Circuit Judge; MOORE, Circuit Judge; WISEMAN, District Judge.[*]

–––––––––––––––

**COUNSEL**

**ARGUED:** Brian J. Leske, WORLDCOM, INC., Washington, D.C., for Appellant. Robert M. Dow, Jr., MAYER, BROWN, ROWE & MAW, Chicago, Illinois, for Appellee. **ON BRIEF:** Brian J. Leske, WORLDCOM, INC., Washington, D.C., Darryl M. Bradford, John R. Harrington, JENNER & BLOCK, Chicago, Illinois, for Appellant. Robert M. Dow, Jr., John E. Muench, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, Jeffrey V. Stuckey, Michael G. Vartanian, DICKINSON, WRIGHT, Lansing, Michigan, for Appellee.

MARTIN, C. J., delivered the opinion of the court, in which WISEMAN, D. J., joined. MOORE, J. (pp. 20-29), delivered a separate concurring opinion.

–––––––––––––––

**OPINION**

–––––––––––––––

BOYCE F. MARTIN, JR., Chief Circuit Judge. The dispute here between MCIMetro Access Transmission Services, Inc. and Ameritech arose when MCI, a competing entrant into the local telecommunications market in Michigan, tried to submit resale orders to Ameritech, an incumbent telephone carrier, via facsimile. The orders were to place or

–––––––––––––––

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

modify services that MCI provided to its customers by purchasing telephone usage from Ameritech and selling it to MCI customers. Ameritech protested that faxing orders violated the interconnection agreement, an agreement between the two parties that allows MCI to share network elements with Ameritech and to provide phone service. Ameritech believes this agreement should be the sole document governing the submission of resale orders. MCI relied upon a state tariff issued by the Michigan Public Service Commission, arguing the state tariff would allow MCI to fax the orders. The Commission agreed with MCI's position and allowed faxing as an acceptable alterative to the terms of the interconnection agreement. Ameritech appealed to the district court from the Commission's decision. The district court concluded that MCI could not fax orders under Ameritech's tariff terms and that the Michigan Public Service Commission's interpretation was arbitrary and capricious. We disagree.

## I. Background and Regulatory Framework

To deregulate the telephone industry, Congress enacted the Telecommunications Act of 1996, codified in 47 U.S.C. Section 151 *et seq*. The Act has been called one of the most ambitious regulatory programs operating under "cooperative federalism," and creates a regulatory framework that gives authority to state and federal entities in fostering competition in local telephone markets. We have often reiterated the Act's purposes, which are ending local telephone company monopolies and promoting competition in local telephone markets. *E.g., Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 582 (6th Cir. 2002).

The Act encourages competitive local telephone markets by imposing several duties on incumbent local exchange carriers, the telephone companies holding monopolies in local markets prior to the Act's implementation. The incumbent must negotiate or arbitrate agreements with competing local carriers, the new entrants into the deregulated market, by providing one of three methods of competition: 1) the

incumbent carrier must provide interconnection to its network to a competing carrier that builds or has its own network, 47 U.S.C. § 251(c)(2); (2) the incumbent carrier must provide access to its network elements on an "unbundled basis" to a competing carrier wishing to lease all or part of the incumbent's network, rather than build its own, 47 U.S.C. § 251(c)(3); and (3) the incumbent must sell its retail services at wholesale prices to a competing carrier that will resell the services at retail prices. 47 U.S.C. § 251(c)(4).

Interconnection agreements set forth terms, rates, and conditions of the arrangements between the incumbent local exchange carrier and a competing local exchange carrier. The Act provides for arbitration of an agreement, review of arbitrated or negotiated agreements, and judicial review of agreements. State utility commissions review and give final approval to interconnection agreements. 47 U.S.C. § 252(e)(1); § 252(e)(2)(A); *Verizon Md. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S.Ct. 1753, 1756, 152 L.Ed.2d 871, 878 (2002). A party aggrieved by a commission decision may bring suit in federal district court to review whether the agreement or statement of terms complies with the Act. 47 U.S.C. § 252(e)(6); *Verizon Md.,* 122 S.Ct. at 1758, 152 L.Ed. at 879-80.

Efforts to foster competition in telecommunications have, in recent years, given rise to complex litigation regarding the relationships between telephone service carriers and between state and federal systems. The Supreme Court has stated "[i]t would be a gross understatement to say that the [Act] is not a model of clarity. It is in many important repsects a model of ambiguity or indeed even self-contradiction." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 395-96, 119 S.Ct. 721, 738, 142 L. Ed. 2d 834, 859 (1999). Much of the complexity has resulted from the Act's incorporation of the concept of "cooperative federalism." Under cooperative federalism, "federal and state agencies should endeavor to harmonize their efforts with one another, while federal courts oversee this partnership by insisting on articulations of regulatory policy that respect the values embodied in the underlying

determinations only to determine whether the state commission's interpretation of state law is arbitrary and capricious. *See S.W. Bell Tel. Co.*, 208 F.3d at 482; *U.S. W. Communications*, 193 F.3d at 1117.

will help to ensure that the state agencies undertake a reasoned consideration of the issues presented to them." Philip J. Weiser, *Chevron, Cooperative Federalism, and Telecommunications Reform*, 52 Vand. L. Rev. 1, 37 (1999). Federal consideration of interconnection agreements will not prevent states from considering matters of state law; it will only ensure that they do so reasonably. Because we only want to ensure that state commissions reasonably apply state law, federal courts must give deference to a state commission's resolution of state law issues.[6] *See MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F. Supp. 2d at 1290 ("Although some level of review of state commission action may be necessary to render meaningful the district court's review for compliance with the Act's legal requirements, the omission of any provision for review for any other purpose suggests that, within the bounds of the Act's legal requirements, review should be deferential."). This accords with the approaches taken by other circuits that recognize federal jurisdiction to review state commission orders for compliance with state law. *S.W. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d at 482; *U.S. W. Communications*, 193 F.3d at 1117.

In sum, the Act gives federal courts jurisdiction to evaluate the determinations of state commissions for compliance with state law. The jurisdictional grant of § 252(e)(6) explicitly allows federal courts to review not only a state commission's determination, but also the agreement interpreted by that determination. By allowing federal courts to consider the agreement, the Act necessarily permits federal review of a state commission's interpretation of the agreement under state law. Although the Act contemplates federal jurisdiction to review state law determinations, we should review such

---

[6] Naturally, we also give deference to a commission's factual determinations: "[W]e join our sister circuits in applying the 'arbitrary and capricious' standard." *Mich. Bell Tel. Co. v. Strand*, 305 F.3d at 586-87 (noting that under this standard a "decision [must] be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence").

legislation." Philip J. Weiser, *Federal Common Law, Cooperative Federalism, and the Enforcement of the Telecom Act,* 76 N.Y.U. L. Rev. 1692, 1732 (2001)). In this regulatory regime state commissions are directed by provisions of the Act and FCC regulations in making decisions, which are subject to federal court review. *P. R. Tel. Co. v. Telecomms. Regulatory Bd. of P. R.,* 189 F.3d 1, 14 (1st Cir. 1999).

At the same time, the Act gives the state commissions latitude to exercise their expertise in telecommunications and needs of the local market. *Id.* We acknowledge that, within applicable standards of review, state commissions, arbitration panels, and administrative law judges have a refined expertise in telecommunications matters that come infrequently before the regional federal courts. Or, as commentators have suggested, "intricate matters, such as rate-setting and determining the feasibility of regulatory mandates, lie beyond the core of judicial competence." Weiser, *supra*, at 1724; *see also Mich. Bell. Tel. Co. v. Level 3 Communications, Inc.* 218 F. Supp. 2d 891, 894 (E.D. Mich. 2002)( stating "[t]his court should not sit as a surrogate public utilities commission to second-guess the decisions made by the state agency to which Congress has committed primary responsibility for implementing the Act."(citation omitted)).

Section 251(d)(3) of the Act provides that a state regulation, order or policy of a state commission that establishes access and interconnection obligations of incumbent carriers will be upheld, as long is it meets federal requirements. The prerequisite for preserving state commission regulations, policies and orders is that these decisions must be consistent with Section 251, and not substantially prevent implementation of the purposes of the Act. With no clear error in interpretation of federal law or unsupported, arbitrary and capricious findings by a state commission, the decisions of such commissions generally stand. *Mich. Bell Tel. Co. v. Strand*, 305 F.3d at 586-87.

## II. Facts and Procedural History

The dispute between these two parties began when MCI, the competing local exchange carrier, tried to submit resale orders to Ameritech, the incumbent local exchange carrier providing telephone services prior to the Act's implementation, via facsimile. These orders directed Ameritech to establish, disconnect, or modify the local telephone service MCI provided to customers through resale. According to the interconnection agreement into which MCI and Ameritech had entered, MCI was permitted to submit faxed resale orders only on an interim and backup basis. The agreement required Ameritech to provide an "electronic interface" so MCI could electronically deliver resale orders. The agreement contained an integration clause as well, stating that the agreement's terms and references to external documents constituted the whole agreement and that neither party would be bound by terms that appear subsequently in the other party's communications or documents.

For approximately two years after the Commission approved MCI and Ameritech's interconnection agreement, MCI placed resale orders electronically. By May 1999, MCI had begun to increasingly provide service through purchased network elements rather than through resale, submitting only three to five resale orders a day.

In February 1998, Ameritech notified its competing local exchange carrier customers that it intended to upgrade the electronic resale service order interface to be compliant with Year 2000 computer system requirements. Ameritech directed users of the interface to upgrade their own systems to maintain compatibility. On May 3, 1999, MCI informed Ameritech it planned to submit future resale service orders by facsimile, under the terms of Ameritech's Michigan tariffs, and neither fund an interface upgrade nor submit orders electronically, as stated in the agreement. Ameritech notified MCI it would not accept faxed orders. When MCI faxed orders to Ameritech, Ameritech refused to process the orders.

agreement, it also authorizes federal judicial review of the agreement itself.

The language of § 252(e)(6) suggests that Congress believed meaningful federal judicial review of a state commission's interpretation of an agreement may require consideration of the agreement itself.[5] Because Congress decided that federal courts can consider the agreement itself, allowing federal judicial review of a state commission's state law determinations is consistent with the Act's vision of cooperative federalism. Cooperative federalism permits "state commissions [to] exercise their expertise about the needs of the local market and local consumers" even as they "are guided by the provisions of the Act and by the concomitant FCC regulations and checked by federal court review for consistency with these federal provisions." *P.R. Tel. Co.*, 189 F.3d at 14 (citations omitted). Allowing federal courts to exercise the jurisdiction specifically afforded to them by the Act cannot possibly upset the contemplated scheme of cooperative federalism. In fact, because the Act specifically authorizes federal judicial review of interconnection agreements, and thus implicitly allows review of the state commission's interpretation of those agreements under state law, federal review for compliance with state law actually furthers cooperative federalism.

Even as the telecommunications regime leaves room for states to rely on and experiment with state law, "the Act's judicial review provisions provide a proceduralist check — even with a deferential review of substantive decisions — that

---

[5]The Fifth, Ninth, and Eleventh Circuits have assumed as much, without explaining their assumption. *S.W. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 481-82 (5th Cir. 2000); *U.S. W. Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir. 1999); *BellSouth Telecomms., Inc., v. MCIMetro Access Transmission Servs., Inc.*, 317 F.3d at 1277 ("[T]he language of § 252 persuades us that in granting to the public service commissions the power to approve or reject interconnection agreements, Congress intended to include the power to interpret and enforce in the first instance and to subject their determination to challenges in the federal courts.").

Because the circuits that have addressed the scope of § 252 jurisdiction have failed to offer persuasive explanations for their conclusions, we are left to interpret the statute for ourselves. We have recognized that under § 252(e)(6), "this court's review of [a state commission's] order is limited to determining whether the order is inconsistent with sections 251 and 252 of the Act."[4] *Mich. Bell Tel. Co. v. Strand*, 305 F.3d at 586. However, this recognition ignores an important component of federal review under § 252(e)(6). Section 252(e)(6) explicitly contemplates not only federal review of the state commission's order interpreting an interconnection agreement, but also federal review of the agreement itself. The statute provides, "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). The purpose clause refers not to evaluating the commission's determination for compliance with § 251 and § 252, but rather to evaluating *the agreement or statement* for compliance with § 251 and § 252. The phrase "agreement or statement" refers to the interconnection agreements discussed throughout § 252 and the "[s]tatements of generally available terms" discussed in § 252(f). *See MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F. Supp. 2d 1286, 1290 n.6 (N.D. Fla. 2000), *aff'd*, 298 F.3d 1269 (11th Cir. 2002). Thus, although § 252(e)(6) refers to an aggrieved party's action to challenge *the state commission's interpretation* of an interconnection

---

[4]This statement reflects no judgment about whether federal courts can review state law questions, such as the interpretation of an interconnection agreement, under § 252(e)(6). In *Michigan Bell*, this court explained that it did not interpret the agreement's terms because the plaintiff had withdrawn its arguments that the state commission order erroneously interpreted the agreement as a matter of state law. 305 F.3d at 585 n.10. This court did not indicate whether it would have been proper to interpret the agreement had the plaintiff not withdrawn its state law claims.

By the time this problem arose, MCI was faxing no more than five such orders a day.

MCI filed a complaint with the Commission on July 6, 1999, requesting an order requiring Ameritech to accept MCI's faxed orders under the terms of the Michigan tariffs. MCI also alleged that Ameritech failed to abide by the terms of the agreement and discriminated against MCI in violation of federal and state law. On August 24 an administrative law judge concluded the agreement did not prohibit MCI from faxing resale orders. The provisions regarding electronic resale service orders imposed obligations only on Ameritech. The administrative law judge also stated that, even if the agreement imposed an obligation on MCI to submit orders electronically, MCI could accept telephone service under Ameritech's retail tariff.

MCI and Ameritech filed cross-motions for review. On January 3, 2000, the Commission concluded Ameritech was not required to accept faxed retail service orders under terms of the Agreement, but must allow MCI to purchase services under the terms of the Michigan tariffs.

Ameritech appealed, and the district court reversed the Commission's decision, granting Ameritech's motion. The district court interpreted interconnection agreements in the Act as "binding" to mean that such agreements are the exclusive means by which competing carriers can obtain interconnection and access to service. The court stated that if a party to an interconnection agreement is unilaterally allowed to rely upon more favorable tariff provisions when the agreement provisions are not economically feasible, the Act's preference for negotiated contracts would be undermined. Because the provisions in the agreement constituted the entire agreement between Ameritech and MCI, the district court concluded that MCI could not exercise Ameritech's tariff terms and that the Commission's interpretation of the agreement was arbitrary and capricious.

## III.  ANALYSIS

### *Standard of Review*

We review de novo district court orders granting summary judgment.  *Avery v. King*, 110 F.3d 12, 13 (6th Cir. 1997).

When reviewing state public service commission orders under the Act, this court  is "limited to determining whether the order is consistent with sections 251 and 252 of the Act." *Mich. Bell Tel. Co. v. Strand*, 305 F.3d at 586.  We review the Commission's interpretation of the Act de novo as well, according little deference to the Commission's interpretation of the Act.  *Id*.  Furthermore, because the Commission " is not an 'agency within the meaning of the Administrative Procedure Act, *see* 5 U.S.C. § 701(b)(1)', so the standards provided by the APA are not directly applicable." *Mich. Bell* at 586.

With respect to the Commission's findings of fact, we apply the arbitrary and capricious standard.  *Id*.  The arbitrary and capricious standard is the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole.  *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998).  We will uphold a decision "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id.*   Nor will we reverse the Commission's decision absent a clear error of judgment or the Commission's failure to consider relevant factors or aspects of the problem.  Nonetheless, we are bound by the reasoning contained in the Commission's decision and use the basis for that decision to frame our application of the Act to the issues in dispute.

### *Jurisdiction over state commission decisions*

MCI  argues  that  the  district  court  inappropriately considered questions of state law that were outside the scope of permissible federal review under 28 U.S.C. § 1331 and the

By contrast, the Fifth and Ninth Circuits have recognized federal jurisdiction to review state commission decisions for compliance with state law.[3]  *S.W. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 481-82 (5th Cir. 2000); *U.S. W. Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir. 1999), *cert. denied*, 530 U.S. 1284 (2000).  In reaching this conclusion, the Fifth Circuit discussed the purpose language of §252 and the First and Seventh Circuits' arguments for reading this language narrowly, but ultimately did not explain its decision to adopt "the broader view, considering *de novo* whether the agreements comply with sections 251 and 252, and reviewing 'all other issues' under an arbitrary-and-capricious standard." *S.W. Bell Tel. Co.*, 208 F.3d at 482.  Similarly, the Ninth Circuit emphasized the purpose language of the statute when discussing the standard of review under § 252(e)(6), but offered no explanation for its decision to "consider[] de novo whether the agreements are in compliance with the Act and the implementing regulations . . . and considering all other issues under an arbitrary and capricious standard." *U.S. W. Communications*, 193 F.3d at 1117.

---

[3]The  Eleventh  Circuit  has  also  said  that  state  commission interpretations of agreements are subject to federal review under § 252. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1279 (11th Cir. 2003) (en banc).  However, the Eleventh Circuit did not decide whether § 252 permits federal review of state law claims, instead concluding that federal courts can exercise pendent jurisdiction to consider state law issues related to a state commission order.  *Id.* at 1278.

The Fifth Circuit claims that the Fourth Circuit "would permit district courts to consider *de novo* whether the agreements are in compliance with the Act and the implementing regulations, but . . . review all other issues decided by a state commission under a more deferential standard." *S.W. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d at 482.  The Fourth Circuit, however, has not interpreted § 252(e)(6) to permit federal judicial review of state commission orders for compliance with state law.  Rather, the Fourth Circuit held that it reviews de novo a state commission's interpretations of the Act and reviews the commission's factfinding under the substantial evidence standard.  *GTE S., Inc. v. Morrison*, 199 F.3d 733, 745 (4th Cir. 1999).

Federal courts therefore have § 252(e)(6) jurisdiction to review a state commission's interpretation of an agreement, although it is not clear whether that jurisdiction permits review of the interpretation for compliance with state law. After all, the Act specifically permits aggrieved parties to bring a federal action for a specific purpose — "to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."   47 U.S.C. § 252(e)(6).  The circuits have split on whether § 252(e)(6) should be interpreted broadly or narrowly, but those circuits recognizing only jurisdiction to review a state commission determination for compliance with federal law rely heavily on this "purpose clause."  Unfortunately, none of the circuits on either side of the split offer a persuasive, reasoned explanation for their conclusions about the scope of federal jurisdiction under the Act.

The First and Seventh Circuits have held that federal courts have § 252 jurisdiction only to review a state commission's determination for compliance with federal law, not state law. The First Circuit relied on the purpose language of § 252(e)(6) to support this conclusion, reasoning that there would have been little need to include this language "[i]f Congress had intended federal courts' review to encompass any kind of alleged legal flaw in a state commission's determination." *P.R. Tel. Co. v. Telecomms. Regulatory Bd. of P.R.*, 189 F.3d 1, 14 (1st Cir. 1999) (noting that this interpretation is also consistent with the Act's general scheme of cooperative federalism).  The Seventh Circuit similarly concluded that Congress included this language "to clarify that federal courts may review a state commission's actions with respect to an agreement only for compliance with the requirements of § 251 and § 252 of the Telecommunications Act, and not for compliance with state law." *MCI Telecomms. Corp. v. Ill. Commerce Comm'n*, 168 F.3d 315, 320 (7th Cir. 1999) (also interpreting the Act to envision suits reviewing "actions" by state commissions rather than "[r]eview of interconnection agreements" themselves).

scope of review under 47 U.S.C. § 252(e)(6).  Our review of a district court's finding of jurisdiction is de novo. *Greater Dist. Res. Recovery Auth. v. EPA*, 916 F.2d 317, 319 (6th Cir. 1990).

In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, the Supreme Court  resolved a circuit split on the issue of whether federal courts have jurisdiction to review state commission orders interpreting and enforcing previously approved interconnection agreements.  *See* 122 S.Ct. 1753 (2002); *U.S. W. Communications, Inc. v. Spring Communications Co.*, 275 F.3d 1241, 1251 n.11 (10th Cir. 2002) (noting the holdings of several circuits on the issue). The Court held, while declining to rule that Section 252(e)(6) expressly gives such authority, that federal courts have jurisdiction to review state commission orders for compliance with federal law, because provisions of the Act do not preclude jurisdiction under 28 U.S.C. § 1331.  122 S.Ct.. at 1759, 152 L.Ed. at 881.

### *Supplemental jurisdiction*

Ameritech asserts that the Commission incorrectly interpreted Michigan contract law in making its determination. Several federal courts have held that a state commission's contractual interpretation of an interconnection agreement is governed by state, not federal, law. *See Ill. Bell Tel. Co. v. Worldcom Tech., Inc.*, 179 F.3d 566, 574 (7th Cir. 1999)( noting that state forums can supply remedies for disputes governed by contract law), *cert. dismissed*, 122 S.Ct. 1780 (2002), *cert. denied*, 122 S.Ct. 2318 (2002); *Southwestern Bell v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 485 (5th Cir. 2000)(holding that state law governs questions of interpretation of agreements and enforcement of provisions).

Ameritech argues that statutory sources may provide authority to review the state law in the decision of the Commission.   The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that district courts with original jurisdiction of a claim have supplemental jurisdiction over

claims that are so related to the claim that provided original jurisdiction that "they form part of the same case or controversy . . . ." The Supreme Court in *Verizon Maryland* allowed federal courts to exercise original jurisdiction under 28 U.S.C. § 1331 to review the decisions of state commissions interpreting and enforcing interconnection agreements.

Thus, having original jurisdiction as contemplated in *Verizon*, a federal court could possibly exercise supplemental jurisdiction over state contract claims that are sufficiently related to the claims regarding a state commission's compliance with federal law in its determinations and interpretations of agreements. A related claim is one arising from a common nucleus of facts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966). The claims must also be such that a plaintiff would be expected to try them in one judicial proceeding. *Id.* The facts in this case all center upon the interpretation of the same contract with respect to state and federal law. The state claim arises from the common nucleus of facts.

Furthermore, these claims are logically tried in the same proceeding. This position concurs with the district court's recognizance, when it quoted *Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Oklahoma, Inc.*, and relied on several district court opinions, that the Act's grant of power to federal courts to review state commission decisions leads to the conclusion that "it would be a waste of judicial resources to limit the court's consideration to federal issues only." *Mich. Bell Tel. Co. v. MCI Metro Access Transmission Servs.*, 128 F. Supp. 2d 1043, 1050 (E.D. Mich. 2001) (quoting *Brooks Fiber*, 235 F.3d 493, 498 (10th Cir. 2000)); *see also BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc.*, 97 F. Supp. 2d 1363, 1376 n.10 (N.D. Ga. 2000).

Our analysis of jurisdiction over the state contract law issues must consider the Supreme Court's holding in *Pennhurst State School and Hospital v. Halderman,* 465 U.S.

The Sixth Circuit has already recognized that § 252 "gives the state commission authority to interpret and enforce agreements when post-approval disputes arise." *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 583 (6th Cir. 2002) (citing 47 U.S.C. § 252(c), (e)(1) and (2) as the basis for this authority). The Federal Communications Commission ("FCC"), the agency charged with implementing the Act, *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, Inc.*, 317 F.3d 1270, 1276 (11th Cir. 2003) (en banc), has likewise recognized that a state commission's § 252 responsibilities include the interpretation and enforcement of interconnection agreements. *In re Starpower Communications, LLC*, 15 F.C.C.R. 11277, 11280, ¶ 7 (2000) (finding that "the Virginia Commission 'failed to act to carry out its responsibility' under section 252" by declining to interpret and enforce Starpower's interconnection agreements). The FCC's interpretation of the statute supports the conclusion that state commissions may interpret agreements within the purview of § 252.

Moreover, "[n]o court has held or suggested that a state commission does not have the authority to interpret and enforce interconnection agreements after they have been approved." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc.*, 317 F.3d at 1276. In fact, several other circuits have held that, by giving state commissions the power to accept or reject interconnection agreements, § 252 necessarily implies their authority to interpret and enforce such agreements. *S.W. Bell Tel. Co. v. Brooks Fiber Communications of Okla., Inc.*, 235 F.3d 493, 497 (10th Cir. 2000); *S.W. Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942, 946 (8th Cir. 2000); *MCI Telecomms. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337-38 (7th Cir. 2000), *cert. denied*, 531 U.S. 1132 (2001); *S.W. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 479-80 (5th Cir. 2000). Thus, it seems clear that interpretation is a determination under § 252, and that a federal court has jurisdiction over a state commission decision interpreting an interconnection agreement pursuant to § 252(e)(6).

However, as state commissions have emphasized, they have Eleventh Amendment immunity against state law claims brought in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). In *McNeilus Truck and Manufacturing, Inc. v. Ohio*, 226 F.3d 429 (6th Cir. 2000), we recognized that this is true even where a federal court would otherwise have supplemental jurisdiction over a state law claim. *Id.* at 438. Therefore, under the Sixth Circuit's precedent, a federal court cannot exercise supplemental jurisdiction to assess the correctness of a state commission's interpretation of an interconnection agreement on any state law ground, even where the court has federal question jurisdiction over a related claim.

Because Sixth Circuit precedent precludes federal courts from exercising supplemental jurisdiction to consider any state law claims pertaining to a state commission's determination, we must revisit the issue that the Supreme Court explicitly left unresolved in *Verizon Maryland* — the scope of § 252. Specifically, we must decide whether the text of "§ 252 implicitly encompasses the authority to interpret and enforce an interconnection agreement that the commission has approved" and whether "an interpretation or enforcement decision is therefore a 'determination under [§ 252]' subject to federal review." *Verizon Md.*, 122 S. Ct. at 1758. Assuming that interpretation decisions are § 252 determinations, we must also decide the effect of § 252(e)(6)'s statement about the purpose of federal review in § 252(e)(6). The Act permits actions in federal court "to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). I believe that (1) a state commission's interpretation decision is a "determination under [§ 252]," and (2) federal review for compliance with state law is contemplated by the purpose of determining whether a state commission's order meets the requirements of §§ 251-252 because § 252(e)(6) provides that such review may begin with consideration of the interconnection agreement in question.

89, 106, 104 S. Ct. 900, 911, 79 L.Ed.2d 67, 82 (1984), in which the Court stated that federal courts cannot enjoin state officials on the basis of state law. MCI and the commissioners argue this supports their position that the Commission's assertion of Eleventh Amendment immunity precludes the federal court's exercise of supplemental jurisdiction over state law claims. In *Southwestern Bell v. Public Utilities Commission of Texas*, 208 F.3d at 485, the Court of Appeals for the Fifth Circuit held that "the Federal courts cannot exercise supplemental jurisdiction to review state law determinations made by a state commission where the commission has asserted sovereign immunity," not unlike the present case.

The Supreme Court, however, ruled that state commissions do not have immunity under the Eleventh Amendment, invoking the doctrine of *Ex Parte Young*. *Verizon Md.*, 122 S.Ct. at 1760, 152 L.Ed.2d at 882. Still, we held in *McNeilus Truck and Manufacturing, Inc. v. Ohio* that suits in federal court against state officials for violation of state law are barred under the Supreme Court's ruling in *Pennhurst,* even if there would otherwise be supplemental jurisdiction. 226 F.3d 429, 438 (6th Cir. 2000). Thus, *Pennhurst* would under our precedent preclude the district court from using supplemental jurisdiction to decide the correctness of the Commission's interpretation of the agreement under state contract law and enjoin enforcement of the Commission's order on any state law grounds.

Without supplemental jurisdiction, we must decide if the Act allows federal courts to exercise jurisdiction over state commission interpretations of state contract law. In *Michigan Bell Telephone Co.*, 305 F.3d at 586, we held that Section 252(e)(6) gives federal courts power to review a state commission order only for the order's compliance with Sections 251 and 252 of the Act. There we did not decide whether it would be proper for us to interpret the agreement because the plaintiff withdrew its arguments that the state commission order erroneously interpreted the agreement as a matter of state law. *Id*. at 585 n.10. Other circuits have held

that Section 252(e)(6) gives courts power to determine only if a state commission's decision violated federal law, and not to review state commission decisions for compliance with state law. *P. R. Tel. Co.*, 189 F.3d at 13; *Ill. Bell*, 179 F.3d at 572.

The language of Section 252(e)(6) allows federal court review of "the agreement or statement" for compliance with Sections 251 and 252. The "agreement" refers to interconnection agreements, and "statement" refers to "[s]tatements of generally available terms" discussed in Section 252(f). To review an agreement for compliance with federal law, as is authorized expressly by Section 252(e)(6), requires interpreting what terms are contained in the agreement. The Federal Communications Commission has determined that interpreting the agreement is a function given to state commissions under the Act, *In re Starpower Communications, LLC*, 15 F.C.C.R. 11277, 11280 ¶ 7 (2000), and no court has denied a state commission the power to interpret agreements. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1276 (11th Cir. 2003) (en banc). Thus, interpretation of an agreement is an authorized state commission determination under Section 252. Given that federal courts may review state commission determinations, we join our sister circuits and hold that federal courts have jurisdiction under Section 252 to review state commission interpretations for compliance with state law. *See BellSouth Telecomms.*, 317 F.3d at 1278; *Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d at 481-82; *U.S. W. Communications v. MFS Intelenet*, 193 F.3d 1112, 1117 (9th Cir. 1999), *cert. denied*, 530 U.S. 1284 (2000).

We adopt a standard of review that ensures state commissions reasonably apply state law. We give deference to a state commission's resolution of state law issues and apply an arbitrary and capricious standard in our review.

*Comm'n of Md.*, 535 U.S. 635, 122 S. Ct. 1753, 1758 (2002). Because § 252(e)(6) neither "establish[es] a distinctive review mechanism for the commission actions that it covers" nor "displays any intent to withdraw federal jurisdiction under § 1331," the Supreme Court saw no need to rely on § 252 for jurisdiction over a federal question. *Id.* at 1759. As the Court explained, "even if § 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." *Id.* at 1758. Thus, the Court concluded that federal courts can review for compliance with federal law both state commission decisions accepting an interconnection agreement and decisions interpreting or enforcing an already accepted interconnection agreement. *Verizon Maryland* did not address whether such decisions are also reviewable for compliance with state law.

The Supreme Court's decision to rely on § 1331 rather than § 252(e)(6) as a basis for jurisdiction suggests that federal courts may be able to exercise supplemental jurisdiction over any state law issues related to a particular federal question about a state commission's treatment of an interconnection agreement. The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State and federal claims arising from a state commission's interpretation of an agreement clearly arise from a "common nucleus of operative facts" and are such that a plaintiff would expect to try them in one judicial proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Thus, supplemental jurisdiction would properly establish a basis for federal review of state law claims related to a determination of whether a state commission decision is in compliance with federal law.

---

## CONCURRENCE

---

KAREN NELSON MOORE, Circuit Judge, concurring. I write separately to explain in more detail why I agree that federal courts have jurisdiction to review the determinations of state public service commissions for compliance with both federal law and state law.

The Federal Telecommunications Act of 1996 ("Act") provides, "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). The Sixth Circuit has clearly recognized that a federal court exercising jurisdiction under § 252 may review a state commission's determination for compliance with federal law. However, this court has not decided whether § 252 authorizes federal courts to review a state commission's determination for compliance with state law.[1]

The Supreme Court, although expressly declining to interpret the scope of § 252(e)(6) jurisdiction, has recognized that federal courts have jurisdiction to review state commission decisions interpreting or enforcing interconnection agreements for compliance with federal law under 28 U.S.C. § 1331.[2] *Verizon Md. Inc. v. Pub. Serv.*

---

[1] Federal courts have generally recognized that the interpretation of an interconnection agreement is governed by state contract law, not federal law. *See, e.g., Ill. Bell Tel. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566, 574 (7th Cir. 1999), *cert. denied*, 122 S. Ct. 2318 (2002).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### *Michigan Contract Law*

Under Michigan contract law, "the trial court must give the language in the contract its ordinary and plain meaning." *Mich. Township Participating Plan v. Pavlovich*, 591 N.W.2d 325, 328 (Mich. App. 1998). Courts must construe contracts "as a whole; if reasonably possible, all parts and every word should be considered; no part should be eliminated or stricken by another part unless absolutely necessary." *Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997); *Associated Truck Lines, Inc. v. Baer*, 77 N.W.2d 384, 386 (Mich. 1956). A court will ascertain the intent of the parties from the plain and unambiguous language of a contract. *Haywood v. Fowler*, 475 N.W.2d 458, 461 (Mich. App. 1991).

The interconnection agreement at issue here does not expressly address whether MCI can still buy services on the terms of Ameritech's tariff. MCI argues it can place orders in accordance with the tariff because the agreement did not expressly waive its right to do so. Ameritech argues that the parties bargained against the backdrop of its tariff, so MCI's right to purchase under the tariff terms would need to be expressly preserved by the agreement in light of the agreement's integration clause.

Two provisions appear to be in conflict about whether MCI may place orders under the tariff terms. First, the integration clause states that the agreement is the entire agreement, "superseding all prior understandings, proposals, and other communications, oral or written." Another section, however, provides that each party must comply at its own expense with applicable state regulations that relate to obligations under the agreement.

Under Michigan contract law, the agreement could be interpreted either way-- either to preclude use of the state tariff term, or to allow it alongside the interconnection agreement. If the law can be reasonably interpreted either way, and the Commission used the deliberate reasoning process required by *Killian*, we must defer to the

Commission's contract interpretation because it is supported by the evidence. Thus, we hold that the Commission did not reach an arbitrary and capricious result under Michigan contract law, and reverse the district court's interpretation.

### Preemption and Violation of the Act

The final issue in analyzing the Commission's order is whether it conflicted with the Act. Ameritech argues that the Commission's order directing Ameritech "to immediately begin processing faxed move, add, change, and disconnect service orders submitted by MCIMetro" violates the Act. Under the Commission's interpretation of the *agreement*, Ameritech did not have to accept faxed orders. The Commission, however, found that Ameritech's *state tariff* did allow faxed orders. Ameritech argues that the court should not allow a competing carrier to use a state tariff to do an end-run around a negotiated interconnection agreement entered pursuant to the Act. The Act, it asserts, "forbids reliance on extraneous tariffs that cover the same subject matter as the interconnection agreements but purport to offer different terms."

According to Ameritech, the order is impermissible, for it imposes a state tariff that interferes with and must be preempted by the "detailed process for interconnection set out by Congress in the [Act]." *Verizon N., Inc. v. Strand,* 309 F.3d 935, 941 (6th Cir. 2002). We said in *Verizon North* that "[e]ven in the case of a shared goal, the state law is preempted 'if it interferes with the methods by which the federal statute was designed to reach its goal.'" *Id.* at 940 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103, 112 S. Ct. 2374, 120 L.Ed.2d 73 (1992)). According to Ameritech, Congress's effort to establish both a pervasive regulatory scheme and detailed procedural mechanisms for implementing interconnection agreements demonstrates that Congress intended private parties, not state regulators, to dictate the terms of interconnection.

State laws can be expressly or impliedly preempted by federal law. Federal law may preempt state law when federal

We find inapplicable the issue Ameritech argued in the alternative, that the Commission's order violates federal law under the *Sierra-Mobile* doctrine, which has been applied to proscribe unilateral alteration of the terms of contract tariffs between carriers. *See Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956); *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956). The cases in which the doctrine has been applied are different from this case. Ameritech's duty to abide by the terms of state law tariffs existed prior to the execution of the interconnection agreement, and neither carrier is attempting to increase the base tariff rates.

This case is not one where competing carriers were attempting to bypass the negotiation process that creates interconnection agreements. In our review of interconnection agreements and state commission determinations, we are mindful of the intent of Congress and the Federal Communications Commission, which is to promote local telephone service competition and prohibit activities that prevent such competition. Here, the parties have complied with the Act by engaging in the negotiation and review process. Employing a different method, allowable under state law, to transmit resale orders does not eviscerate the agreement and does not prevent competition. Allowing the state tariff in this particular instance to stand alongside the Agreement does not frustrate the purposes of the Act. Thus, we REVERSE the district court and AFFIRM the order of the Michigan Public Service Commission.

interconnection agreement and with approval of the state commission. *Id*. at 1250-51.

Ameritech contends that MCI's attempt to use the Michigan tariff is not covered under Section 252(i) of the Act, because MCI neither intended to include state tariffs in the interconnection agreement nor pointed to a specific provision in another agreement. Though MCI did not include in the interconnection agreement an express provision allowing it to opt into a tariff, allowing MCI to purchase under terms of Ameritech's Michigan tariffs will ensure that competitors are able to buy on the most favorable terms available in a given local market. Michigan's tariffs and the agreements negotiated pursuant to the Act work toward the common purpose of giving new entrants a means of competing with incumbent local exchange carriers. Under the system of cooperative federalism established by the Act, it is permissible for Michigan to maintain a tariff system alongside the agreements negotiated under the Act.

Ameritech cited our opinion in *Verizon North* to support its argument that allowing use of the tariff conflicts with the Act. In *Verizon North*, a Commission order directed an incumbent carrier to publish tariffs offering to sell elements of its network at predetermined rates and to provide competitors with access to operational, pre-assembled service platforms. *Verizon N.*, 309 F.3d at 938. We invalidated this order as in conflict with the Act. *Id.* at 941. We distinguish this case, though. The parties in *Verizon North* were not disputing whether to allow use of a term from an existing interconnection agreement or from an existing tariff, as is the situation in the instant case. In *Verizon North* we found the Commission's order improper because it "provide[d] an alternative route around the entire interconnection process (with its attendant negotiation/arbitration, state commission approval, FCC oversight, and federal court review procedures)." 309 F.3d at 943. Here, both parties have engaged in the entire interconnection process, and the tariffs preexisted the interconnection agreement.

statutory provisions or objectives would be frustrated by the application of state law. Moreover, where Congress intends for federal law to govern an entire field, federal law preempts all state law in that field. In *Springston v. Consolidated Rail Corp.* we held that when a state law is not expressly preempted, courts must begin with the presumption that the law is valid.130 F.3d 241, 244 (6th Cir. 1997), *cert. denied*, 523 U.S. 1094 (1998). We wrote, "'[i]t will not be presumed that a federal statute was intended to supersede the exercise of power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed.'" *Id.* (quoting *N. Y. State Dep't of Soc. Servs. v. Dublino,* 413 U.S. 405, 413 (1973)).

Michigan enacted tariff provisions for local service providers in 1991 under the Michigan Telecommunications Act, Mich. Comp. Laws § 484.2101 *et seq*. To facilitate resale of local exchange service and interconnection of telecommunications providers with basic local exchange service, Michigan requires that "...each provider of local exchange service shall file tariffs with the commission which set forth the wholesale rates, terms, and conditions for basic local exchange services." *Id.* § 484.2357(4).

When Congress enacted the federal Act, it did not expressly preempt state regulation of interconnection. In fact, it expressly *preserved* existing state laws that furthered Congress's goals and authorized states to implement additional requirements that would foster local interconnection and competition, stating that the Act does not prohibit state commission regulations "if such regulations are not inconsistent with the provisions of [the FTA]." 47 U.S.C. § 261. Additionally, Section 251(d)(3) of the Act states that the Federal Communications Commission shall not preclude enforcement of state regulations that establish interconnection and are consistent with the Act. 47 U.S.C. § 251(d)(3).

The Act permits a great deal of state commission involvement in the new regime it sets up for the operation of local telecommunications markets, "as long as state

commission regulations are consistent with the Act." *Verizon N.*, 309 F.3d at 944. The Federal Communications Commission's ruling in *In re Public Utility Commission of Texas*, 13 F.C.C.R. 3460, ¶52 (Oct. 1, 1997), draws several conclusions from these provisions of the Act:

 . . .Congress has made clear that the States are not ousted from playing a role in the development of competitive telecommunications markets. . . . however, Congress did not intend to permit state regulations that conflicted with the 1996 Act....Thus, a state may not impose any requirement that is contrary to terms of sections 251 through 261 or that "stands as an obstacle to the accomplishment and execution of the full objectives of Congress." . . . Congress plainly authorized agency preemption based on a conflict between enacted federal rules and state requirements.

According to the Federal Communications Commission, as long as state regulations do not prevent a carrier from taking advantage of sections 251 and 252 of the Act, state regulations are not preempted. *Id.* ¶¶50-52.

In *Law Offices of Curtis V. Trinko v. Bell Atlantic Corp.*, 305 F.3d 89, 102 (2nd Cir. 2002), the Court of Appeals for the Second Circuit stated that the Act intended for incumbent carriers to be governed by the interconnection agreement rather than general duties put forth in subsections 251(b) and (c). These two subsections require an incumbent to negotiate agreements and provide interconnection, but once an agreement is approved, these general duties do not control, lest carriers have diminished incentive to enter interconnection agreements. 305 F.3d at 103. Though an approved interconnection agreement means the general duties of 251(b) and (c) no longer apply, the Act is silent with respect to preexisting state duties.

The Act, then, recognizes that interconnection agreements are not the sole way to promote competition among local service providers, for it allows room for state regulation. The Act does not impliedly preempt Michigan's tariff regime.

The Commission can enforce state law regulations, even where those regulations differ from the terms of the Act or an interconnection agreement, as long as the regulations do not interfere with the ability of new entrants to obtain services. Assuming that the interconnection agreement did not preclude MCI's placing resale orders under Ameritech's tariff obligations, the agreement and the Michigan tariff obligations can co-exist and work in concert to promote local service competition.

MCI further argues that its obligations under the interconnection agreement are binding only when it purchases services by way of the agreement. Ameritech argues that the interconnection agreement, once it has been negotiated, is the only way for MCI to purchase services and, as a binding agreement under the Act, is also exclusive. The Commission, however, did not require MCI to purchase services through only the interconnection agreement. The right of the Commission to enforce pre-existing tariffs as state regulation is consistent with the Act. The negotiation procedure under Section 252 of the Act is not the only way for the Commission to order and regulate telecommunications.

The Tenth Circuit held in *U.S. W. Communications, Inc. v. Sprint Communications Co.* that a competitor's decision to purchase services under the incumbent's tariff did not abandon the interconnection agreement, but amended it to include the tariff terms. 275 F.3d at 1251. That court interpreted Section 252(i) of the Act as allowing a competing carrier to "effectively amend its own interconnection agreement by taking advantage of more favorable provisions contained in other [competing carriers'] interconnection agreements. . . . [T]he provision, by allowing [competing carriers] to purchase services at equal prices and on equal terms, enables a [competing carrier] to remain competitive with other [competing carriers] in the local market." *Id.* at 1249. Ultimately Sprint was allowed to purchase services at rates and terms articulated in either the interconnection agreement or the incumbent's tariff. Both means of purchase, however, were considered to be pursuant to the