No. 3--03--0207

(Consolidated with No. 3--03--0515)

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004 

ILLINOIS BELL TELEPHONE ) 

COMPANY, )

 ) 

Petitioner-Appellant, ) 

 ) 

v. ) 

 ) 

ILLINOIS COMMERCE COMMISSION, ) Petition for Review of 

CITIZENS UTILITY BOARD, and ) Orders of the Illinois 

THE PEOPLE OF THE STATE OF ) Commerce Commission in 

ILLINOIS, ) Consolidated Docket Nos.    ) 98--0252, 98--0335, and 

 Respondents-Appellees. ) 00--0764.

_________________________________________________________________

     JUSTICE SCHMIDT delivered the opinion of the court:

_________________________________________________________________

Petitioner Illinois Bell Telephone Company (doing business as SBC Illinois) (SBC Illinois) appeals two orders issued by the Illinois Commerce Commission (Commission).  SBC Illinois contends the Commission lacked statutory authority to include a wholesale performance remedy plan and a capital spending requirement in its two orders reviewing and extending an alternative regulatory plan.  SBC Illinois specifically contends that the Commission unlawfully extended conditions contained in a prior 1999 Commission order that concerned the reorganization of SBC Illinois.  Additionally, SBC Illinois argues the Commission action is not supported by substantial evidence in the record.  We affirm in part and reverse in part.

I.  BACKGROUND

A. Introduction

In 1994, the Commission adopted a plan of alternative regulation (Alt Reg Plan) for SBC Illinois, then doing business as Ameritech Corporation, pursuant to section 13--506.1 of the Public Utilities Act (Act).  (220 ILCS 5/13--506.1 (West 1992)).  Section 13--506.1 authorizes the Commission to establish alternative forms of regulation with respect to the noncompetitive services provided by a telecommunications carrier, 
i.e.
, to establish an alternative to traditional rate of return regulation.  220 ILCS 5/13--506.1 (West 1992).  In essence, the 1994 Alt Reg Plan controlled the price of services rather than SBC Illinois' earnings.

In the 1994 order, the Commission specified that because the Alt Reg Plan was new and untested, it should be comprehensively reviewed after a five-year period to determine whether it was meeting the requirements and goals of the Act.  The Commission action at issue in this appeal was initiated pursuant to an application filed on March 31, 1998, to conduct such a review.  Because, however, portions of a 1999 Commission merger order are relevant to the resolution of this appeal, we first outline the history of that prior order before turning to the Alt Reg Plan review at issue here.

B. The 1999 Merger Order 

In 1998, an application was filed seeking Commission approval of the proposed merger between Ameritech Corporation and SBC Communications, Inc.  In September of 1999, the Commission approved the application, subject to the implementation of certain conditions.  Those conditions included a capital spending obligation established under Condition 7, and a wholesale performance remedy plan contained in Condition 30.

1. The Condition 7 Capital Investment Obligation

The original 1994 Alt Reg Plan included a requirement that at least $3 billion be spent in Illinois for growth and modernization of the telecommunications network over the first five-year period of the plan.  A second $3 billion network infrastructure investment obligation was later included in the 1999 merger order as Condition 7.  This second commitment was intended to cover the initial five-year period following the merger.  However, the Commission also stated in its order that the second investment requirement would be subject to adjustment in a subsequent review of the Alt Reg Plan.

2. The Condition 30 Remedy Plan

Condition 30 relates to certain wholesale services SBC Illinois performs for competing local telephone companies (CLECs).
(footnote: 1)  The services provided by SBC Illinois arose from interconnection agreements established by negotiation and arbitration under the Telecommunications Act of 1996 (47 U.S.C. ྷ251 
et
 
seq
. (2004)).

Condition 30 required SBC Illinois to review and implement a set of performance measurements, standards, and remedies similar to those that SBC Communications, Inc., had agreed to implement in Texas.  The measures imposed by Condition 30 summarize the results of wholesale operations that SBC Illinois performs for the CLECs pursuant to their interconnection agreements.  The data in these measures are typically compared against specific standards to gauge performance.  In the event that SBC Illinois did not meet the applicable standards, Condition 30 provided a remedy in the form of a system of self-executing automatic payments to be made by SBC Illinois to competing carriers and to the State of Illinois.  The merger order mandated that Condition 30 was to expire on October 8, 2002, three years after the merger was completed.

3. Previous Litigation Regarding Condition 30

SBC Communications, Inc., and Ameritech Corporation accepted the merger conditions and consummated the merger in 1999.  Thereafter, various stakeholders attempted to finalize the rules and regulations for Condition 30 through a collaborative process.  When that process failed to yield a complete set of requirements, a subsequent 17-month formal process (Commission Docket 01--0120) was initiated to implement final regulations.  The Commission entered a final order in Docket 01--0120 on July 10, 2002.  In that order, the Commission held that Condition 30 would expire on October 8, 2002, just as the Commission had originally specified in the 1999 merger order.  The final order also directed SBC Illinois to file a tariff reflecting the order, so as to "ensure that those carriers that 
do not
 have an Interconnection Agreement with [SBC Illinois] will have the benefit of the Remedy Plan."  (Emphasis added.)

SBC Illinois soon filed such a tariff.  When it did so, it included language in a footnote indicating that the tariff would expire on October 8, 2002.  However, on October 1, 2002, without notice to SBC Illinois, the Commission entered an "Order on Reopening," which directed the chief clerk of the Commission to strike the footnote indicating that the tariff would expire.  After SBC Illinois' application to the Commission for rehearing was denied, the matter was appealed to this court.  
Illinois Bell Telephone Co. v. Illinois Commerce Comm'n
, 343 Ill. App. 3d 249, 797 N.E.2d 716 (2003).

On appeal, this court reversed a portion of the Commission's merger order.  We found that the Commission had no authority to allow CLECs without interconnection agreements with SBC Illinois to have the benefit of the Condition 30 remedy plan.  This court found that this aspect of the Commission's order subverted the negotiation and arbitration process prescribed by section 252 of the Telecommunications Act of 1996.  47 U.S.C. ྷ252 (2000).  We also held that the order on reopening improperly extended the remedy plan condition of the merger order beyond the October 8, 2002, termination date.  This holding was grounded in our determination that the Commission both disregarded the merger order's sunset provision and violated SBC Illinois' due process rights by failing to notify and provide an opportunity to be heard regarding the amendment.  
Illinois Bell
, 343 Ill. App. 3d 249, 797 N.E.2d 716. 

C. The Alt Reg Plan Review

While the above litigation was pending before this court, the Commission completed its work on the review of the Alt Reg Plan.  The Commission entered its final order on December 30, 2002.
(footnote: 2)  This order addressed both how the Alt Reg Plan functioned during the initial five-year period and the type and extent of modifications that would be necessary for the future.  

The Commission's ultimate conclusion was that, taken as a whole, the Alt Reg Plan continued to be a valuable and appropriate form of regulation.  However, the Commission made some modifications of the Alt Reg Plan to ensure that it continued to operate in the public interest.  Two of these modifications are at issue in this appeal: a capital spending obligation and a wholesale performance remedy plan.  These modifications are related to the two 1999 Commission merger order conditions discussed above.

1. Inclusion of a Capital Spending Obligation 

In its order extending alternative regulation, the Commission included a capital spending obligation.  The Condition 7 capital spending obligation found in the 1999 merger order had been set to expire in 2004.  However, the Commission determined that a new spending requirement should be included in the Alt Reg Plan to ensure future investment in network infrastructure.  Therefore, the Commission included the network investment requirement as a condition of continued alternative regulation.  Specifically, pursuant to the February 14, 2003, amendatory order, the Commission required SBC Illinois to invest $1.8 billion in network infrastructure improvements from 2005 to 2007 and $600 million every year thereafter.  This requirement was to remain in place until such time as the Commission issued a subsequent order continuing or terminating the Alt Reg Plan.

2. Use of the Condition 30 Remedy Plan

Additionally, the Commission responded to concerns raised by a number of witnesses and ordered that the requirements of Condition 30 be incorporated into the Alt Reg Plan.  The concerns of these witnesses were grounded in the fact that the requirements of Condition 30 might soon expire (as we later held to be the case in 
Illinois Bell
, 343 Ill. App. 3d 249, 797 N.E.2d 716
), and that there might be some period where no wholesale performance remedy plan would be in place.  For its part, SBC Illinois argued that the issue of wholesale service quality should be addressed in a separate proceeding and not included as a part of the modified Alt Reg Plan.  

Nevertheless, the Commission found that certainty and consistency in the wholesale telecommunications market was necessary for the CLECs, for competition, and for the future success of alternative regulation.  The Commission also viewed the Condition 30 remedy plan as being the most thorough and complete alternative available at the time.  The Commission therefore ordered that the requirements of Condition 30 be incorporated into the Alt Reg Plan.

However, use of the Condition 30 remedy plan was only a temporary measure.  The Commission was cognizant of the fact that SBC Illinois had applied to the Federal Communications Commission (FCC) for permission to provide in-region long distance service pursuant to section 271 of the Telecommunications Act of 1996 (47 U.S.C. ྷ271 (2002)).  The Commission was also aware that as a result of its own proceedings related to the section 271 application, an entirely new remedy plan would soon be in place.
(footnote: 3)  Therefore, the Commission ordered that Condition 30 be included in the modified Alt Reg Plan temporarily until its own section 271 proceedings were completed and a new remedy plan put in place. 

II.  ANALYSIS

On appeal, SBC Illinois contends that the Commission's decision to incorporate Condition 30 and Condition 7 into the Alt Reg Plan was both beyond the Commission's statutory authority and unsupported by substantial evidence.

A. Standard of Review

The Illinois Commerce Commission is an administrative

 agency, and judicial review of its orders is limited.  
Illinois Power Co. v. Illinois Commerce Comm'n
, 316 Ill. App. 3d 254, 736 N.E.2d 196 (2000).  The Commission's findings of fact are 
prima
 
facie
 correct and will not be overturned by a reviewing court unless they are against the manifest weight of the evidence, beyond the statutory authority of the Commission, or violative of constitutional rights.  
People ex rel. Hartigan v. Illinois Commerce Comm'n
, 148 Ill. 2d 348, 592 N.E.2d 1066 (1992).  The Commission's ruling on a question of law is not binding on a court of review (
Archer-Daniels-Midland Co. v. Illinois Commerce Comm'n
, 184 Ill. 2d 391, 704 N.E.2d 387 (1998)), and is reviewed 
de
 
novo
 (
Continental Mobile Telephone Co. v. Illinois Commerce Comm'n
, 269 Ill. App. 3d 161, 645 N.E.2d 516 (1994)).

B. Condition 30 and Commission Authority

SBC Illinois asserts that the Commission's inclusion of a wholesale performance remedy plan in the modified Alt Reg Plan amounted to an impermissible extension of Condition 30 of the 1999 merger order.  We disagree.

1. Mootness

We initially note that the respondents contend that this issue is moot because the section 271 process has now been completed, and the Condition 30 remedy plan has been replaced by an entirely new wholesale performance remedy plan developed therein.  
Pierce Downer's Heritage Alliance v. Village of Downers Grove
, 302 Ill. App. 3d 286, 704 N.E.2d 898 (1998) (an appeal may be dismissed as moot when intervening events have rendered it impossible for the reviewing court to grant the complaining party effectual relief).  However, SBC Illinois argues that it paid millions of dollars pursuant to the Condition 30 remedy plan in the months between the Commission's final order in this docket and the time a new remedy plan was established in the section 271 process.  The legality of those payments is not a moot issue, and this court rejects this argument accordingly.  

2. Overall Authority

SBC Illinois argues that the Commission lacked the authority to extend Condition 30 as part of the modified Alt Reg Plan.  SBC Illinois contends that this case merely reiterates the same issues addressed in its previous appeal to this court in 
Illinois Bell
, 343 Ill. App. 3d 249, 797 N.E.2d 716
.  SBC Illinois points out that the Commission originally created Condition 30 pursuant to section 7--204(f) of the Act.  220 ILCS 5/7--204(f) (West 1998).  SBC Illinois argues that this section grants the Commission power to impose conditions only in the context of approving reorganizations, not in the context of alternative regulation proceedings.  See 220 ILCS 5/7--204(f) (West 2002).  Finally, SBC Illinois notes that we previously invalidated an attempt by the Commission to extend the duration of the Condition 30 remedy plan as a condition of the 
1999
 
merger
 
order
.  
Illinois Bell
, 343 Ill. App. 3d 249, 797 N.E.2d 716
.  However, this argument ignores the distinct and independent authority the Commission had to incorporate and impose the Condition 30 remedy plan as a condition of continued 
alternative
 
regulation
.

The Commission reviewed and extended alternative regulation pursuant to the authority granted by section 13--506.1 of the Act.  220 ILCS 5/13--506.1 (West 2002).  That section grants the Commission very broad authority to implement, review and modify any alternative regulation plan.  220 ILCS 5/13--506.1(a) (West 2002) ("[t]he Commission is authorized to adopt different forms of regulation to fit the particular characteristics of different telecommunications carriers and their service areas"); 220 ILCS 5/13--506.1(b) (West 2002) ("[t]he Commission shall review and may modify or reject the *** plan").  Moreover, a provision of the original 1994 Commission order establishing alternative regulation for SBC Illinois called for the review, and possible modification, of the plan after an initial five-year period.  Thus, both the Act and the original 1994 order gave the Commission authority to conduct a review of the plan and to require necessary modifications.

Moreover, SBC Illinois has given us no valid reason to invalidate the Commission's decision to make use of a wholesale performance remedy plan that was already fully formed.  Nothing in the Act requires that the Commission develop such a plan from scratch.  The Condition 30 plan had been developed through a collaborative process and a subsequent 17-month formal Commission schedule of hearings, testimony and briefing.  It was fully documented, and, as the Commission concluded in the December 30 order, it was "the most thorough and complete alternative at [the] time."  The Commission had the good sense--and the authority--to make use of that plan on a temporary basis until the section 271 process was completed a few months later.

3. Preemption

However, despite the broad authority that the Commission had to include the Condition 30 remedy plan as a part of the modified Alt Reg Plan, a portion of that plan must be overturned.  The Commission adopted the final Condition 30 remedy plan, as modified and finalized in the Docket 01--120 final order of July 10, 2002.  In the prior litigation involving that order, this court found that order to have exceeded the Commission's authority by allowing CLECs without interconnection agreements with Ameritech to have access to the remedy plan.  
Illinois Bell
, 343 Ill. App. 3d 249, 797 N.E.2d 716.  We found this aspect of the Commission's order had subverted the negotiation and arbitration process required by section 252 of the Telecommunications Act of 1996 (47 U.S.C. ྷ252 (2000)) and was therefore preempted by the federal act. 

Nothing in the Act, even the independent authority for alternative regulation found in section 13--506.1, gives the Commission the power to controvert federal law.  Therefore, to the limited extent that the Alt Reg Plan likewise makes the remedy plan available to CLECs without interconnection agreements with SBC Illinois, it is in violation of federal law and must be overturned.

4. Interconnection Agreements

Finally, the respondent CLECs contend that the preemption issue is inapplicable to them because each already has an interconnection agreement with SBC Illinois.  The CLECs argue that we should not interfere with their right to access the wholesale remedy plan, as that right arises under the terms of those agreements and not the terms of Commission orders at issue here.  However, this argument is not properly before the court at this time.  The actual interconnection agreements that the respondent CLECs refer to are not a part of the record, but are merely attached as exhibits to the CLECs' appellate brief.  It would not be proper to interpret those agreements at this time, and we will not do so.  
George v. Ospalik
, 299 Ill. App. 3d 888, 702 N.E.2d 982 (1998) (reviewing court will not consider anything that is not contained in the record). 

C. Condition 30 and Substantial Evidence

SBC Illinois also challenges the sufficiency of the evidence supporting the Commission's decision to incorporate the Condition 30 remedy plan into the modified Alt Reg Plan.  We find substantial evidence in the record to support that decision.

The Commission is an administrative agency, and judicial review of its orders is limited.  
Illinois Power Co.
, 316 Ill. App. 3d 254, 736 N.E.2d 196.  Moreover, the Commission's findings of fact are 
prima
 
facie
 correct.  
Hartigan
, 148 Ill. 2d 348, 592 N.E.2d 1066.  While decisions of the Commission must be supported by substantial evidence, that standard may be met even if the evidence supports more than one possible conclusion.  
Central Illinois Public Service Co. v. Illinois Commerce Comm'n
, 268 Ill. App. 3d 471, 644 N.E.2d 817 (1994).  The party challenging a Commission decision has the burden of affirmatively demonstrating that the opposite conclusion is clearly evident.  
Abbott Laboratories, Inc. v. Illinois Commerce Comm'n
, 289 Ill. App. 3d 705, 682 N.E.2d 340 (1997).

The Act requires that alternative regulation: (1) be in the public interest; (2) respond to changes in technology and the structure of the industry that are, in fact, occurring; (3) maintain the quality and availability of telecommunications services; and (4) not unduly or unreasonably prejudice or disadvantage any particular customer class, including telecommunication carriers.  220 ILCS 5/13--506.1(b) (West 2002).  The Act also calls on the Commission to utilize alternative regulation as a means to promote competition as a substitute for government regulation.  220 ILCS 5/13--103(b) (West 2002). 

The Commission heard testimony from a number of staff members, competitors and observers of the telecommunications industry who concluded that a continuing wholesale performance remedy plan was needed to ensure the development of competition. Commission staff member Sam McClerren, who had over 16 years' experience in the telecommunications industry, testified that the ability of CLECs to provide quality service to their retail customers was dependant in large part on the quality of the wholesale services they purchased from SBC Illinois.  He stated that SBC Illinois must be provided with the proper incentive to provide adequate wholesale service quality if real competition is to be possible.  McClerren testified that the continuation of the Condition 30 wholesale performance plan would provide that incentive. 

Charlotte Terkeurst, 
a telecommunications industry consultant, testified on behalf of the Illinois Attorney General, the Cook County State’s Attorney’s office, the Citizens Utility Board, and the City of Chicago.
  She presented evidence of SBC Illinois’ poor service quality.  She also testified that pure price cap regulation, the type of regulation that SBC Illinois was subject to under the Alt Reg Plan, creates an incentive for telecommunications carriers to allow their service quality to degrade as they cut costs and maximize profits.  Finally, Terkeurst recommended that service quality measures should be made a part of the Alt Reg Plan to ensure that SBC Illinois provided the best possible service to both retail and wholesale customers.

The views of these two witnesses were supported by representatives of two of the respondent CLECs.  McLeod USA's Rod Cox and AT&T's Cate Hegstrom echoed the above concerns and recommendations.  The only response from SBC Illinois on the issue was a recommendation that it would be more appropriate to deal with wholesale service quality in another proceeding.  Based upon the record before it, the Commission disagreed.  It found it to be imperative to the public interest as well as to the future success of alternative regulation that the Condition 30 plan be adopted as part of the Alt Reg Plan, at least until the section 271 process was completed and a new remedy plan put in place. 

It is clear that substantial evidence in the record supports the Commission's decision.  At least four witnesses with significant experience in telecommunications testified about the wholesale service quality issues that existed and how a continuing remedy plan would help address those issues.  The Commission heard testimony that SBC Illinois was not adequately providing wholesale service to the CLECs that had joined the marketplace since the original 1994 Alt Reg Plan.  These competing carriers were therefore having difficulty providing quality service to their own customers.  This situation impaired competition and, ultimately, the quality of telecommunications service provided to all.  Finally, a number of witnesses testified that continuing the Condition 30 remedy plan as a component of the Alt Reg Plan would provide SBC Illinois with the incentive to improve its service.  The Commission therefore fulfilled its statutory responsibilities when it determined that there was a need for an ongoing wholesale performance remedy plan.  SBC Illinois has failed to show how, in light of the goals of the Act, the evidence presented, and the high standard of review, the Commission decision must be set aside. 

D. Capital Spending Obligation and Statutory Authority

SBC Illinois also attacks that portion of the order creating a new capital spending obligation.  SBC Illinois first challenges the Commission's authority to do so, contending that this requirement is yet another illegal extension of a provision of the 1999 merger order.  In making this argument, SBC Illinois continues to ignore the independent statutory authority that the Commission has been granted by section 13--506.1 of the Act.

 As noted above, both the Act and the original 1994 Alt Reg Plan give the Commission the authority to conduct a review of the plan and to require necessary modifications.  Moreover, section 13--506.1 of the Act specifically provides that "the Commission may implement alternative forms of regulation in order to establish just and reasonable rates for noncompetitive telecommunications services including, but not limited to, *** 
a network modernization plan
."  (Emphasis added.)  220 ILCS 5/13--506.1(a) (West 2002).  The Act calls on the Commission to use this power to, among other things, "facilitate the broad dissemination of technical improvements to all classes of ratepayers."  220 ILCS 5/13--506.1(a)(4) (West 2002).  The Act also forbids the Commission from approving a plan of alternative regulation unless it "will maintain the quality and availability of telecommunications services."  220 ILCS 5/13--506.1(b)(6) (West 2002).  

We find that the capital spending requirement the Commission included in the Alt Reg Plan is a network modernization plan aimed at these concerns.  It was a decision taken within the authority granted to the Commission by the Act.  The fact that the Commission phrased this action as an extension of the merger order condition does not change the fact that this order, like the $3 billion capital spending requirement found in the original 1994 Alt Reg Plan, was a proper exercise of the Commission's section 13--506.1 power. 

E. Capital Spending Obligation and Substantial Evidence

While the Commission did have the authority to include a capital spending requirement in the Alt Reg Plan, we agree with SBC Illinois that the Commission did not justify that decision with sufficient supporting evidence.  Although the standard of review on such evidentiary issues is deferential, we nevertheless find that the Commission has completely failed to point to evidence that supports such a multibillion dollar spending obligation.

We begin by noting that there is some evidence to support the 
need
 for a capital spending requirement.  A number of witnesses testified to the failures of service quality and how those failures were a result of insufficient network investment.  The Commission summarized this evidence in the final order when it stated, "we cannot ignore the compelling evidence that shows the degradation of service quality being caused, in part, by a lack of quality investment in infrastructure."  The Commission specifically cited this service quality history as part of its justification in imposing a new investment requirement.  

However, the specific dollar amounts actually imposed are completely unsupported by the record.  The Commission imposed a spending requirement of $600 million per year until a subsequent order either continued or terminated the plan.  There is simply no evidence to support that particular figure.  It appears that the Commission based this figure on the $3 billion figure (to be spent over a five-year period) used in the 1994 Alt Reg Plan and in the 1999 merger order.  However, the Commission did not hear any evidence as to how this specific level of funding or any level of funding, for that matter, was the appropriate amount going forward or how this amount would achieve the statutory goals for alternative regulation.  If the Commission is going to impose multiyear, multibillion dollar spending obligations, we would expect evidence justifying that decision.  Even under the deferential standard of review on such issues, this specific capital spending requirement must be reversed.

III.  CONCLUSION

For the reasons stated, we reverse that portion of the Commission's order that extended the Condition 30 remedy plan to CLECs without interconnection agreements with SBC Illinois.  We also reverse the Commission's decision to include a $600 million per-year capital spending obligation in the modified Alt Reg Plan.  In all other respects, we affirm the Commission's order.  This cause is remanded to the Commission with directions to enter an order consistent with this opinion. 

Affirmed in part and reversed in part; cause remanded with directions. 

HOLDRIDGE, P.J., and O'BRIEN, J., concur. 

FOOTNOTES
1: These companies provide competing local exchange telecommunications services to the Illinois public through their own facilities, as well as through various telecommunications services leased or purchased from SBC Illinois.

2:  SBC Illinois appeals both the December 30, 2002, order (case No. 3--03--207) and a February 14, 2003, amendatory order making minor changes thereto (case No. 3--03--0515).  The two appeals were consolidated by this court’s order of July 23, 2003.

3: A final order in the Commission's section 271 proceedings--containing both the Commission's recommendation to the FCC and a new remedy plan--was issued as part of Docket 01--0662 on May 13, 2003.